[No. F006932. Fifth Dist. Aug. 13, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
WILBERT J. ODEN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through IV.

**COUNSEL**

William W. Kauffman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Jane N. Kirkland, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**MARTIN, J.**—Appellant, Wilbert Joseph Oden, was ultimately charged by amended information with one count of murder (Pen. Code, § 187, subd. (a)),[1] one count of assault with intent to rape (§ 220), and one count of attempted burglary (§§ 459, 460.1, and 664). With regard to the murder, special circumstance allegations were alleged that the murder occurred during the commission of either a rape or burglary (§ 190.2, subd. (a)(17)(iii) and (vii)). Various allegations which could lead to enhancements of the sentence were also alleged to each count.

The jury returned verdicts of guilty of second degree felony murder and misdemeanor assault, while acquitting appellant of the burglary charge. Appellant was also found to have used a knife while committing the murder and assault, and to have caused great bodily injury during the assault.

Appellant was sentenced to a total term of imprisonment of 16 years to life. The court also imposed a $10,000 restitution fine. A timely notice of appeal was filed.

### FACTS

Early in the morning of February 26, 1985, Joseph Garcia was awakened by a car horn honking. After Joseph failed to see anything at the window and returned to bed, he heard thumping noises and a door slam. Joseph returned to the window and saw a man running toward his house. The man approached the house, pivoted, and ran back in the opposite direction. Joseph recalled the man wore a black running-type outfit and white shoes.

Joseph's neighbor, Esther Garcia, no relation, was also awakened by a car horn at approximately 2 a.m. Esther went to the window and saw a man leave a car, run up to the house next door, then run back to the car. The next time the man left the car he ran along the side of the house and jumped over a fence between the two houses. Esther remembered the man was wearing a black jogging suit.

---

[1] Unless otherwise specified all statutory references are to the Penal Code.

At about the same time, Officer James Thornsbury was patrolling in the neighborhood when he saw an individual walk away from a car. Officer Thornsbury became suspicious when the individual walked toward a house a considerable length away from the car. After calling for assistance Officer Thornsbury walked over to the car. Inside he found the body of Teresa Torres. Teresa was naked from the waist down. A knife was also found in the car. What appeared to be blood was smeared in various places inside the car.

Joseph Torres was married to Teresa Torres. During the day on February 25, 1985, Joseph worked out with appellant at a local schoolyard. Torres remembers appellant wearing a black martial arts outfit.

Later that same evening appellant appeared at the Torres apartment and asked Teresa "Where the action was." Teresa offered some suggestions and appellant left. Appellant returned with his sister about 10 p.m., which was within a half hour after his last visit. Appellant's sister asked Teresa if she could drive appellant home to his mother's house. Stating Teresa was busy, Joseph drove appellant home. After returning home, Joseph retired to the bedroom where he watched television. He last saw his wife somewhere between 11:30 and 12 midnight when he fell asleep.

Dr. Amand Dollinger, a pathologist, described the various injuries he discovered on Teresa's body. Teresa suffered numerous wounds from a knife, mostly on her hands and left arm. Dollinger opined these wounds were received as Teresa tried to defend herself from an attack by a knife-wielding assailant. Teresa also had bruises on her face and scratches on her neck. It was Dr. Dollinger's opinion, however, that Teresa's death was caused by asphyxiation due to strangulation.

Officer Bruce Blodgett went to appellant's mother's house later in the day on February 26. Officer Blodgett obtained from appellant a black "gi"—a martial arts outfit. The "gi" had what appeared to be blood spots all over it. There were also white shoes with blood spots on one toe. Officer Blodgett arrested appellant at this time.

The blood stains on appellant's "gi," as well as dried blood taken from behind appellant's ear, matched Teresa's blood—which was a rare type. Fingerprints taken from window screens that had been removed from the Torres apartment matched those taken from appellant at the time of booking.

*Defense*

The gist of the defense was that appellant and the victim met for a "date" that night and argued when appellant was unable to get an erection during foreplay. The victim was then accidently killed during the argument.

## DISCUSSION

### I. DID THE TRIAL COURT REVERSIBLY ERR IN INSTRUCTING THE JURY IN THE LANGUAGE OF CALJIC No. 8.32?

 Appellant raises this argument through an assertion he was denied effective assistance of counsel. Respondent counters that the error by defense counsel was invited, preventing appellant from raising it on appeal. For reasons to be stated herein, we conclude this issue must be addressed.

 The record indicates defense counsel submitted the following instruction to the trial court: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a direct causal result of the commission of or attempt to commit a felony inherently dangerous to human life, namely, *the crime of assault with force likely to produce great bodily injury,* and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the second degree.

"The specific intent to commit assault with force likely to produce great bodily injury and the commission of or attempt to commit such crime must be proved beyond a reasonable doubt." (See CALJIC No. 8.32, italics added.) This instruction is invalid pursuant to *People* v. *Ireland* (1969) 70 Cal.2d 522, 539 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323], which holds a "second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." (Fn. omitted.) Assault is an integral part of most homicides, a hypothesis supported by the facts in this case. Consequently, the instruction should not have been given.

 Respondent argues appellant should not be able to raise this issue because his own attorney at trial invited the error by submitting the instruction. However, whether or not the error was invited, the crucial inquiry is whether appellant was denied effective assistance of counsel when his attorney proposed an improper instruction that may affect the validity of the verdict.

The United States Supreme Court addressed the issue of ineffective assistance of counsel in *Strickland* v. *Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674, 104 S.Ct. 2052]. The court stated that when a defendant claims counsel's assistance was ineffective, a two-part test must be met. (*Id.* at p. 687 [80 L.Ed.2d at p. 693].) Initially, the defendant must show that counsel's performance was deficient. (*Ibid.*) The standard used in making this determination is whether the attorney provided reasonably effective assistance. The attorney's performance must be reasonable under prevailing professional norms. (*Id.* at pp. 687-688 [80 L.Ed.2d at pp.693-694].) Once the defendant has shown that counsel's performance was defective, he or she must then demonstrate that the deficient performance prejudiced the defense.

■ The guidelines set down by the United States Supreme Court in *Strickland* are consistent with the standards previously used by California courts to measure a possible ineffective assistance of counsel claim. Specifically, in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144], the California Supreme Court held: "[I]n cases in which a claim of ineffective assistance of counsel is based on acts or omissions not amounting to withdrawal of a defense, a defendant may prove such ineffectiveness if he establishes that his counsel failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings." Using this standard, the courts are not limited to searching for the loss of potentially meritorious defenses as was required under *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]. Instead, the courts can now look to whether a defendant was prejudiced by his or her attorney's inadequate performance.

■ In the instant case, defense counsel below requested the jury be instructed in the language of CALJIC No. 8.32. The record reflects that the district attorney, initially at least, objected to the giving of this instruction as inappropriate in view of the evidence. The trial judge was also reluctant but eventually gave in to appellant's argument and gave the instruction. Neither the trial judge nor either counsel were then aware of the prohibition under *Ireland* and its progeny. Thus, the error occurred. The question remains, however, whether in requesting this instruction defense counsel had a deliberate tactical purpose and/or whether giving the erroneous instruction was prejudicial to appellant?

In *People* v. *Fain* (1969) 70 Cal.2d 588 [75 Cal.Rptr. 633, 451 P.2d 65], an opinion filed the month after our Supreme Court's *Ireland* opinion, the court stated: "Defendant also argues that the trial court committed prejudicial error in its instruction on the felony second degree murder rule. The

trial court delivered CALJIC No. 305 (revised), the standard second degree murder instruction . . . . Defendant maintains that the felony second degree murder rule has no application if the felony resulting in homicide is assault with a deadly weapon. In *People* v. *Ireland* (1969) *ante,* pp. 522, 539 . . . , we so stated, and observed that in the circumstances of that case such an instruction 'would have substantially eviscerated the defense, which was based upon principles of diminished capacity.' By contrast, no prejudice appears in the case at bar, in which the sole defense was alibi." (*Id.* at p. 598, fn. omitted.)

*People* v. *Jenkins* (1969) 275 Cal.App.2d 545 [80 Cal.Rptr. 257], in another analogous situation involving a second degree felony murder instruction, stated as follows: "On the foregoing record it is concluded that the instruction as given 'substantially eviscerated the defense, which was based upon principles of diminished capacity.' (*People* v. *Ireland, supra,* 70 Cal.2d at p. 539, fn. 13.) The People's contention that the evidence of diminished capacity should be disregarded because there is little if any evidence to sustain the hypothesis upon which defendant's expert based his opinion and that it is, therefore, not persuasive is more properly addressed to the trier of fact. It is concluded that the error complained of may have resulted in a miscarriage of justice and requires a reversal. 'Error in an instruction which ordinarily would not prejudice the rights of a defendant may justify a reversal of the judgment where the jury is misdirected or misled upon an issue vital to the defense and the evidence does not point unerringly to the guilt of the person accused. . . . The question for an appellate court under these circumstances is whether, considering the entire record, the challenged instruction may have prejudiced the convicted person's rights. (Const., art. VI, § 4 1/2 [now § 13].) If it is probable that in the absence of a misleading instruction the jury would not have returned the verdict complained of, then there has been a miscarriage of justice within the meaning of the constitutional provision. [Citations omitted.]' (*People* v. *Rogers* (1943) 22 Cal.2d 787, 807 . . . .)" (*Id.* at p. 551, fn. omitted.)

■ These cases teach that CALJIC No. 8.32 error is reversible only upon a showing where the jury is misdirected or misled upon an issue vital to the defense and the evidence does not point unerringly to the guilt of the person accused. In other words, appellant must show prejudice. These cases also reflect that the erroneous instruction was not requested by the defense, as in the instant case.

On the question of whether defense counsel exercised a deliberate tactical choice by submitting the instruction, *People* v. *Avalos* (1984) 37 Cal.3d 216 [207 Cal.Rptr. 549, 689 P.2d 121] is instructive. There, defendant was convicted by a jury of murder in the second degree with use of a firearm,

and of two counts of assault with a deadly weapon, both involving use of a firearm and infliction of great bodily injury. The *Avalos* jury informed the trial court it was unable to agree on the degree of murder, although there was agreement that defendant was guilty of murder. The trial court instructed the jury it could return a verdict of murder without specifying the degree if the jurors were unable to reach a unanimous verdict on that question. The jury returned verdicts finding defendant guilty of murder in violation of section 187, without specifying the degree, and the trial court deemed the conviction to be second degree murder pursuant to section 1157.

On appeal, appellant contended the trial court erred in this instruction to the jury and argued reversal was mandated. Our Supreme Court disagreed. "In this particular case, however, the record indicates the defense in fact made a tactical decision that the erroneous instruction and the resulting verdict of second degree murder would be more advantageous to the defendant than a mistrial and subsequent retrial on the charge of first degree murder. This deliberate tactical motive for encouraging the trial court to proceed with an erroneous instruction precludes defendant from asserting this error as a basis for a reversal of his conviction.

"The trial court's duty to fully and correctly instruct the jury on the basic principles of law relevant to the issues raised by the evidence in a criminal case is so important that it cannot be nullified by defense counsel's negligent or mistaken failure to object to an erroneous instruction or the failure to request an appropriate instruction. (*People* v. *Graham* (1969) 71 Cal.2d 303, 317-319 . . . .) The existence of some conceivable tactical purpose will not support a finding that defense counsel 'invited' an error in instructions. The record must reflect that counsel had a deliberate tactical purpose. As this court recently explained, 'the issue centers on whether counsel deliberately caused the court to fail to fully instruct, not whether counsel subjectively desired a certain result.' (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 334-335 . . . .)" (*Id.* at pp. 228-229.) The court concluded that defense counsel below had a deliberate tactical purpose for accepting the court's instruction and the verdict based upon it. Counsel thereby avoided subjecting defendant to a new trial at which he may have been convicted of a more serious crime, i.e., first degree murder.

Turning to the instant case and the record before us, the following scenario evolves. Appellant was charged with murder and special circumstances. The jury was death qualified and the district attorney was seeking the death penalty. The evidence admitted at trial amply supported a conclusion that appellant killed the victim in the course of an assault with the

intent to commit rape, as charged. Although the jury would be and was instructed on the lesser included offenses of straight second degree murder, including the element of malice, and manslaughter, defense counsel sought to have the jury instructed on one additional related but not necessarily included offense, second degree felony murder. He ultimately convinced the trial court to give the instruction and to include a second degree felony murder verdict among the various verdicts presented to the jury. In doing so he was able to present one more alternative verdict of a lesser crime than first degree murder with special circumstances for the jury's consideration, one more option. It is not important that he, and the court, were then unaware of the *Ireland* rule. Nor is it important that, in so doing, he inferentially waived or conceded the element of malice as to this one related offense. The jury was properly instructed as to the necessary elements of first degree murder and straight second degree murder, including the necessary element of malice. And, most importantly, trial counsel succeeded in his deliberate tactical motive. The jury found appellant guilty of second degree *felony* murder, upon these facts a very favorable result. Under the circumstances, it can hardly be said appellant was prejudiced. Moreover, as the Supreme Court stated in *People v. Geiger* (1984) 35 Cal.3d 510, 526 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055]: "The principal impediment to instructions on related, but not necessarily included, offenses is the defendant's right to notice adequate to permit him to prepare his defense. That right is not a concern, however, when a defendant requests conviction of a related offense. A defendant may not be 'convicted of an offense which is neither specifically charged in the accusatory pleading nor "necessarily included" within a charged offense, *when he does not consent to the substituted charge.* . . ['']Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]"' *(People v. Lohbauer, supra,* 29 Cal.3d 364, 367-368, italics added.)

"Where, however, the defendant himself requests the instruction on a related offense there is no constitutional bar. Obviously, such a defendant cannot claim lack of notice. *(People v. West* (1970) 3 Cal.3d 595, 612 . . . ; *People v. Ramos* (1972) 25 Cal.App.3d 529, 539 . . . .)" While it was error for the trial court to instruct the jury in the language of CALJIC No. 8.32, the instruction did not result in prejudice to the appellant and, absent this instruction, it is not reasonably probable a determination more favorable to the appellant would have resulted in the absence of counsel's failings. *(People v. Fosselman, supra,* 33 Cal.3d 572, 584.)

## II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Franson, Acting P. J., and Hamlin, J., concurred.

---

*See footnote, *ante,* page 1675.