[No. B025404. Second Dist., Div. Six. July 25, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ANDREW COLE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The portions to be published follow.

**COUNSEL**

Dennis A. Fischer and John M. Bishop for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Carol Wendelin Pollack, Sharon R. Wooden and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

STONE (S. J.), P. J.—Richard Andrew Cole appeals from a judgment of conviction for unlawful possession of cocaine (Health & Saf. Code, § 11350).[1] We find merit in his assertion that a special defense instruction could have misled the jury concerning a material factor in his defense and that the trial court had a duty to correct it. Consequently, because of prejudicial error in jury instructions, we reverse and remand the case for retrial.[2]

### FACTS

July 3, 1985, Officer Floriano, Detective Loniero, Sergeant James, and other officers searched appellant's house and garage pursuant to a search warrant, and uncovered a safe containing $6,354.55 in currency, weights for a small scale, razor blades, a straw, a gold ring, a plastic ziplock bag of white powder and a similar bag containing white residue. When Officer Floriano, in Sergeant James's presence, showed appellant the bag containing white powder, appellant said, "That's for my personal use." The bag contained .651 grams of an approximate 48 percent cocaine mixture. On a nearby workbench, Officer Floriano found a scale, a white powder covered microscope, several pieces of paper resembling bindles used to package cocaine, and a box of ziplock baggies. Also, in the garage, they observed large cans of coffee, candy bars, and similar food items, as well as a large copying machine and computer equipment.

Officer Loniero testified that he found four paper bindles, precut bindles, a sifter and a small scale in the upstairs bedroom and three bindles of cocaine in a purse belonging to appellant's daughter Jennifer.

---

[1] All statutory references hereinafter are to the Health and Safety Code unless otherwise specified.

[2] In the unpublished portion of this opinion, we discuss his assertion that the trial court erred in denying his motion to suppress evidence seized during a search of his residence authorized by a search warrant. We find the affidavit supporting the search warrant set forth sufficient facts for a magistrate to conclude that there was a "fair probability that contraband or evidence of a crime" would be found inside. (*Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317].)

Jennifer, 18 years old at trial, one and a half years after the search, admitted the cocaine found in the upstairs room was hers and testified that the cocaine found in the safe also belonged to her. She said her father confiscated it the day before the search when he caught her using it in the bathroom. According to Jennifer, appellant took the cocaine, stormed out of the bathroom, and threatened to call the police. She was already on juvenile court probation for drug use. When the police arrived the next day, she initially assumed they were responding to a call from her father. She identified the baggies seized from the safe as those her father took from her and said he also seized other items, such as the razor blades and straw. At time of trial, she was still on juvenile court probation for admitting possession of the cocaine.

Appellant testified to the same sequence of events and explained that Jennifer had had a drug problem for some time. He told his wife, when he seized the baggies from Jennifer, that he was going to call the police, but his wife urged him not to do so. She wanted to dispose of the drugs immediately but later agreed to discuss the matter with him over the weekend and then to decide whether to discard the cocaine or turn it over to the police. He acquiesced and put the cocaine in the safe until they decided which course to pursue. The following day, the police arrived with the search warrant.

Appellant is in the vending machine and computer business and explained that he uses the scale to weigh various foods such as cheesecake, coffee, and sandwich meat. He purchased the microscope, he said, to study pond microorganisms with his youngest daughter, and the cash was for the purchase of a computer, the invoice for which he gave to his former attorney, Matisoff. Appellant's bank statement showed a corresponding withdrawal and Matisoff testified appellant did, in fact, give him the invoice but that he had misplaced it. Appellant said he used razor blades to scrape adhesive off his vending machines and had placed a large quantity in the safe when he purchased them several years earlier to keep them safely away from his youngest daughter. He said he told the officer the cocaine in the safe was "for personal use" or "for her personal use" as he was afraid they would arrest Jennifer for sales.

Appellant's wife, Tamara Cole, said she asked appellant not to call the police because she feared Jennifer would be removed from their home since she was already on probation. They knew she had a drug problem and the entire family had been in counseling.

Joe Naso, appellant's employee, was present July 2 when appellant came out of the house yelling and screaming. Naso saw him deposit what

appeared to be a baggie of white powder in the safe. He said the scales were used for weighing food, such as cheesecake slices, for the vending machines. Two character witnesses from the community testified to appellant's good character and reputation for honesty but were unaware until trial that he had been convicted of selling marijuana in 1965, arrested for burglary in 1967, or arrested in connection with a bottle rocket in 1976.

DISCUSSION

*Motion to suppress**

. . . . . . . . . . . . . . . . . . . . . .

*Special defense instructions*

Appellant requested, and the trial court gave, the following jury instruction: "The fact that the defendant physically handled a controlled substance for only brief moments for the purpose of abandoning or disposing of the controlled substance is insufficient evidence to convict the defendant of possession of that controlled substance even though he knew its nature as a controlled substance. [¶] If you have a reasonable doubt whether the defendant was handling the controlled substance for only brief moments for the purpose of disposal you must give him the benefit of this doubt and find him not guilty."

This instruction is based upon *People* v. *Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115]. There, the California Supreme Court was faced with the issue whether handling a narcotic for the purpose of disposal is sufficient for conviction of the crime of possession as defined by former section 11500, now included in section 11350. In *Mijares,* defendant was seen by a Mrs. Beard to lean into a car, slap the passenger, remove something from him, throw it in a field and drive away. Mrs. Beard called the sheriff. Defendant drove his passenger to a fire station and said his friend needed oxygen. The passenger had overdosed on heroin. A sheriff's deputy retrieved the objects thrown from the car—a hypodermic needle, paper, and spoon with a grey residue. The deputy arrested defendant.

Defendant stated that he picked up his friend who appeared groggy, drove him around to revive him, and when he stopped, the passenger passed out. Suspecting he had overdosed, defendant searched, found the narcotics kit, and threw it away before going for help. He contended on appeal that

---

* See footnote, *ante,* page 1439.

the jury should have been instructed that if his handling of the narcotic was solely for the purpose of disposal, such handling was insufficient for conviction of the crime of possession.

The California Supreme Court declared that federal courts had rejected the notion that criminal possession under federal statutes includes such transitory activity as momentary handling of drugs. The court noted that the Seventh Circuit reversed a federal narcotics conviction, declaring; " ' "To 'possess' means to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature." ' " (6 Cal.3d at p. 420.) The Supreme Court also found support for defendant's position in *Garland* v. *State* (1933) 165 Miss. 136 [146 So. 637] in which the Mississippi Supreme Court declared that a wife who had been arrested for throwing out a jug of illegal alcohol had possessed it for the sole purpose of putting an end to the unlawful possession of the liquor by her husband. (*Ibid.*) The *Mijares* court held, in paraphrasing *Garland,* that "in throwing the heroin out of the car, defendant Mijares maintained momentary possession for the sole purpose of putting an end to the unlawful possession of Rodriguez" (*Mijares, supra,* 6 Cal.3d at p. 420) and that the jury should have been instructed that the possession prohibited by section 11500 does not include mere handling for only brief moments prior to abandoning the narcotics. (*Id.,* at p. 423.)

 Appellant contends that, while the duration of a defendant's control over a substance is certainly relevant, whether possession lasted "only brief moments" is not the sine qua non of innocent possession as discussed in *Mijares* and the cases cited therein; the ultimate issue is defendant's intent. (See *People* v. *Hampton* (1981) 115 Cal.App.3d 515, 523 [171 Cal.Rptr. 312]; *People* v. *Grantham* (1972) 26 Cal.App.3d 661, 665 [103 Cal.Rptr. 262]; *People* v. *Sonleitner* (1986) 183 Cal.App.3d 364 [228 Cal.Rptr. 96].)

Respondent argues that *Mijares* is based upon momentary handling because the Supreme Court stated that "The logic is inescapable and the rule is well-settled that actual abandonment of an object terminates possession thereof. [Citations.] It would be incongruous to adhere to cases declaring that abandonment concludes an existing narcotic possession and then hold that during the brief moment involved in abandoning the narcotic, a sufficient possession which did not previously exist somehow comes into being to support a conviction for possession of contraband." (6 Cal.3d at p. 422.) Respondent submits that the special instruction correctly set forth the theory relied upon by appellant, i.e., that appellant had physical possession of the cocaine only briefly while he spoke with his wife, and then immediately locked it in the safe where it remained until seized the next day by the police.

Respondent overlooks two important points: First, immediately prior to the special instruction, the court instructed the jury, per CALJIC 12.00, that "A person who, although not in actual possession, knowingly has the right of control over a thing, either directly or through another person or persons, is then in constructive possession of it." Second, the prosecutor in closing read the special instruction to the jury and then stated, "Now, by his own testimony, he had it for more than a day, which makes it questionable whether we're even talking about brief moments here."

Defense counsel countered that appellant handled the cocaine only momentarily before placing it in the safe and intended to either turn it over to the police or dispose of it—the same argument respondent now makes. However, based on the jury instructions, the jury might fully believe that appellant momentarily handled the cocaine for purposes of disposal or abandonment, but might also be convinced that because the drugs were in his constructive possession in the safe for more than "brief moments," decide that it had to convict him.

A perusal of cases interpreting *Mijares* and careful reading of *Mijares* leads us to conclude that its holding is not limited to possession for "brief moments" only, but that possession of illegal drugs *solely for the purpose of disposal* does not constitute unlawful possession. We find footnote 5 of *Mijares* supports this interpretation: "Here, there can be no claim of harmless error. As stated previously, there was sufficient evidence that defendant possessed the heroin only for purposes of disposal. Without an instruction stating that such possession was insufficient for a conviction under section 11500, the jury could have disbelieved the other incriminating evidence and believed that he had possession only in order to abandon it; yet under the instructions as given the jury would have been required to find defendant guilty no matter which version of the evidence it believed." (6 Cal.3d 415, 423, fn. 5.)

That same analysis pertains here. Appellant's only defense, upon which he presented substantial evidence, was abundantly clear. Equally clear after the prosecutor's argument was the perplexing dilemma in which the jury found itself; the combination of the "only brief moments" language in the special instruction and the constructive possession language in CALJIC 12.00 required a jury to convict appellant whether or not it believed his defense.

We reject respondent's belated challenge at oral argument that the error was invited. "[E]rror is nonetheless error and is no less operative on deliberations of the jury because the erroneous instruction may have been requested by counsel for the defense. . . ." (*People* v. *Graham* (1969) 71 Cal.2d

303, 319 [78 Cal.Rptr. 217, 455 P.2d 153] disapproved on other grounds in *People* v. *Ray* (1975) 14 Cal.3d 20, 29-30 [120 Cal.Rptr. 377, 533 P.2d 1017].) ■ The California Supreme Court held in *People* v. *Wickersham* (1982) 32 Cal.3d 307, 332 [185 Cal.Rptr. 436, 650 P.2d 311] that if defense counsel suggests or accedes to the erroneous instruction because of neglect or mistake the court will not find "invited error" unless counsel expresses a deliberate, tactical purpose in suggesting it.

■ Even an accurate statement of the law may be erroneous as an instruction if it is likely to mislead or misdirect a jury upon an issue vital to the defense and where the evidence does not "point unerringly to the guilt of the person accused. . . ." (*People* v. *Oden* (1987) 193 Cal.App.3d 1675, 1682 [239 Cal.Rptr. 232].) In the instant case, the special instruction may have been accurate for the facts in *Mijares* from which it was adopted, but was misleading when applied to the facts here.

Did the trial court have a sua sponte duty to modify the instruction? We recognize the trial court's understandable dilemma of "damned if you do, damned if you don't" choices; if the court refuses a proper defense instruction, it may be reversed and if it accedes to an erroneous instruction it may also suffer reversal. ■ Nonetheless, the trial court is under an affirmative duty to give, sua sponte, correctly phrased instructions on a defendant's theory of defense where it is obvious that the defendant is relying upon such a defense, or if there is substantial evidence to support it. (*People* v. *Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317]; *People* v. *Bottger* (1983) 142 Cal.App.3d 974, 979 [191 Cal.Rptr. 408] *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826].) This duty has been held to include tailoring or correcting an instruction to the particular facts of the case. (*People* v. *Hall* (1980) 28 Cal.3d 143, 159 [167 Cal.Rptr. 844, 616 P.2d 826] disapproved on other grounds in *People* v. *Valentine* (1986) 42 Cal.3d 170 [228 Cal.Rptr. 25, 720 P.2d 913]; *People* v. *Guthrie* (1983) 144 Cal.App.3d 832, 842 [199 Cal.Rptr. 671]; see also *People* v. *Aho* (1984) 152 Cal.App.3d 658, 663 [199 Cal.Rptr. 671]; *People* v. *Coates* (1984) 152 Cal.App.3d 665, 670-671 [199 Cal.Rptr. 675]; *People* v. *Brown* (1984) 152 Cal.App.3d 674, 678 [199 Cal.Rptr. 680].)

■ Hence, the trial court had a duty to correct the instruction either by deleting the "only brief moments" language or by further instructing that the length of time appellant had the narcotics in his actual or constructive possession was only one factor in the jury's determination of whether the possession was unlawful. ■ For guidance on retrial, we suggest the instruction could be tailored as follows: If the defendant physically controlled the substance solely for the purpose of its disposal, such possession would not be unlawful even though he knew its nature as a controlled

substance. Length of time of possession is one of the factors which may be considered when deciding whether the defendant physically handled the substance solely for disposal.

As in *Mijares,* there is no question here but that the erroneous instruction was prejudicial. Consequently, his conviction must be reversed and remanded for retrial. Because appellant's other allegations of instructional error are pertinent to his retrial, we will discuss them briefly.

*Burden of proof*

Appellant contends that the second paragraph of the special instruction, *ante,* impermissibly shifted the burden of proof to appellant. That paragraph states, "If you have a reasonable doubt whether the defendant was handling the controlled substance for only brief moments for the purpose of disposal you must give him the benefit of this doubt and find him not guilty." We agree with appellant that this paragraph is awkwardly phrased and ambiguous. Additionally, because of the order in which it was given, i.e., following CALJIC No. 12.00 defining the offense and the first paragraph of the erroneous special instruction, the jury could infer that it must convict appellant (or presume him guilty) of possession of cocaine *unless* it found appellant's evidence raised a reasonable doubt whether he possessed the cocaine solely for purposes of disposal. (See *People* v. *Milham* (1984) 159 Cal.App.3d 487 [205 Cal.Rptr. 688].) On retrial this second paragraph should be omitted.

. . . . . . . . . . . . . . . . . . . . .*

The judgment is reversed and remanded for new trial.

Gilbert, J., and Abbe, J., concurred.

---

*See footnote, *ante* page 1439.