[No. D008507. Fourth Dist., Div. One. Nov. 22, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
LON ALBERT SULLIVAN, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

---

[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of sections II, III and IV.

**COUNSEL**

Ronald K. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Pat Zaharopoulos and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KREMER, P. J.**—Lon Albert Sullivan appeals his convictions for manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a)), possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)), possessing methamphetamine for sale (Health & Saf. Code, § 11378), and driving without a license (Veh. Code, § 14601.1, subd. (a)). On appeal, he contends the court committed instructional and sentencing errors. We conclude Sullivan's requested instruction was properly refused, his conviction of possession of methamphetamine must be reversed because it is a lesser included offense of his conviction of possession of methamphetamine for sale, and his sentence for possession of methamphetamine for sale must be stayed pursuant to Penal Code section 654.

### FACTS

At about 7:20 p.m. on November 24, 1987, Sheriff's Deputy Donald Phelps stopped Sullivan for driving a vehicle without a rear license plate and for having a right turn indicator light that flashed white instead of red. Sullivan got out of his truck and walked back to the deputy. Deputy Phelps asked Sullivan for his name and driver's license. Sullivan told the deputy his name and stated his license had been suspended.

Phelps approached Sullivan's Land Cruiser and smelled chemicals he associated with methamphetamine labs. After Phelps arrested Sullivan for

driving without a license, he opened the back of the vehicle and was "as-sailed" with an overpowering chemical odor. In the vehicle he found an amber fluid and other items associated with methamphetamine labs. He radioed for a narcotics task force officer to come to the site.

A search of Sullivan's person yielded a plastic bag containing 6.7 grams of 53 percent pure methamphetamine. The search of his vehicle yielded chemicals and equipment used for producing methamphetamine. There were containers of liquid containing trace amounts of methamphetamine which were consistent with the waste product generated by the second step of methamphetamine production. The materials did not constitute a complete methamphetamine lab; a chemical necessary for the final step was not present.

In the front seat of the vehicle, the police seized a gram scale, numerous small plastic baggies and Sullivan's address book which had notations consistent with the purchase of a chemical necessary for methamphetamine manufacture and with the sale of methamphetamine.

The police proceeded to Sullivan's house and searched the interior but found nothing. The officers noticed a shed in the back which had a lock on the door. They asked Sullivan's girlfriend for a key to the shed. She said Sullivan had the key. The officers unsuccessfully attempted to open the lock with her keys and then obtained Sullivan's key rings. One of his keys opened the lock.

Inside, the officers found an orange metal container labeled Freon, a chemical used in processing methamphetamine, as well as a separator funnel and other paraphernalia associated with the manufacture of methamphetamine.

In his defense, Sullivan presented testimony that while he was in custody, his girlfriend had rented out a shed behind their house to Thomas Siegor. Her friend had drawn up a written rental receipt which was produced at trial. After several months had lapsed without Siegor paying any rent, Sullivan borrowed a pair of bolt cutters from a friend and cut Siegor's lock off the shed. Sullivan and his friend entered the shed where they found the methamphetamine, chemicals and paraphernalia. The friend urged Sullivan to call the police. Sullivan was afraid to call the police because he was on probation for a drug offense. Instead, he decided to take the chemicals and equipment to an industrial park and dispose of them in a dumpster there. He wanted to remove the chemicals from the property immediately because he knew they were dangerous and he was afraid for his children.

He loaded the Land Cruiser with the chemicals and equipment from the shed, put his own lock on the shed's door and told his girlfriend he was going to the store. He was pulled over by the sheriff's deputy about a quarter mile from his house.

## DISCUSSION

### I

Sullivan contends the court erred in refusing his requested instruction that "Limited handling of contraband, such as for the purpose of abandonment, will not support a conviction for possession."

■ A trial court has a duty to instruct the jury on principles of law which are closely and openly connected with the evidence and which are necessary to the jury's understanding of the case. (*People v. Flannel* (1979) 25 Cal.3d 668, 681 [160 Cal.Rptr. 84, 603 P.2d 1].) A defendant is entitled to have the court instruct on a defense theory if it is supported by substantial evidence, i.e., if a reasonable jury could conclude the particular facts underlying the instruction existed. (*People v. Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311]; *People v. Lemus* (1988) 203 Cal.App.3d 470, 477 [249 Cal.Rptr. 897].) The testimony of the defendant alone may constitute substantial evidence to warrant a requested instruction. (*People v. Speaks* (1981) 120 Cal.App.3d 36, 40 [174 Cal.Rptr. 65].) " ' "The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon." ' [Citations.]" (*People v. Burnham* (1986) 176 Cal.App.3d 1134, 1143 [222 Cal.Rptr. 630], italics omitted.) " ' "However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true." ' [Citations.]" (*Ibid.,* italics omitted.)

Sullivan's requested instruction derives from the Supreme Court's decision in *People v. Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115]. In *Mijares,* the defendant reached into his friend's pocket, grabbed a red bandanna containing heroin and tossed it into a field. The defendant then drove his friend, who had apparently overdosed, to a fire station for help. The court reviewed cases suggesting a momentary possession of contraband for disposal would not support a possession conviction, noting well-settled law establishing actual abandonment of an object terminates possession of the object. The court reasoned "[i]t would be incongruous to adhere to cases declaring that abandonment concludes an existing narcotic possession and then hold that during the brief moment involved in abandoning the narcotic, a sufficient possession which did not previously exist somehow comes into being to support a conviction for possession of contraband." (*Id.*

at p. 422.) The court concluded the jury should have been instructed that illegal possession "does not include merely handling for only brief moments prior to abandoning the narcotic." (*Id*. at p. 423.) The Supreme Court also emphasized its "decision in no way insulates from prosecution under the narcotics laws those individuals who, fearing they are about to be apprehended, remove contraband from their immediate possession" nor insulated "certain actions relating to abandonment of narcotics [which] fall within the proscription of section 135 of the Penal Code, forbidding the destruction or concealment of evidence." (*Id*. at p. 422.)

Following the *Mijares* decision, the instruction has been refused in a number of cases because the evidence did not show the defendant possessed the evidence for the purpose of disposal (see *People* v. *Grantham* (1972) 26 Cal.App.3d 661 [103 Cal.Rptr. 262] [defense version showed defendant was keeping illegal drugs in a safe place until claimed by another]; *People* v. *Booker* (1978) 77 Cal.App.3d 223 [143 Cal.Rptr. 482] [defense version showed ex-felon defendant was carrying a gun for the purpose of selling it to a pawnbroker]; *People* v. *Hampton* (1981) 115 Cal.App.3d 515 [171 Cal.Rptr. 312] [defense version showed defendant only briefly possessed airfreighted shipment of marijuana but nothing indicated his possession was for disposal]); or because the evidence showed the disposal of contraband was in response to a fear of being apprehended by the police (see *People* v. *Rand* (1972) 23 Cal.App.3d 579 [100 Cal.Rptr. 473] [defendant fled with drugs due to phone call by the police]; *People* v. *Sonleitner* (1986) 183 Cal.App.3d 364 [228 Cal.Rptr. 96] [defendant flushed drugs down toilet as police raided house]).

Recently, the court in *People* v. *Cole* (1988) 202 Cal.App.3d 1439 [249 Cal.Rptr. 601] held the *Mijares* defense was not limited to the type of fleeting possession that occurred in *Mijares*. The *Cole* court held *Mijares* was "not limited to possession for 'brief moments' only." (*People* v. *Cole, supra,* at p. 1445.) The *Cole* court held "possession of illegal drugs solely for the purpose of disposal does not constitute unlawful possession." (*Ibid.,* italics omitted.) In *Cole,* the defendant's house was searched pursuant to a search warrant. Cocaine was found in the defendant's safe and elsewhere in the house. The defendant testified the day before the search he had seized the cocaine from his minor daughter, who was on probation for possessing cocaine, and placed it in his safe, intending either to dispose of the drugs himself or to turn them over to the police. The trial court gave the defendant's requested instruction telling the jury: " 'The fact that the defendant physically handled a controlled substance for only brief moments for the purpose of abandoning or disposing of the controlled substance is insufficient evidence to convict the defendant of possession of that con-

trolled substance even though he knew its nature as a controlled substance.'" (*Id.* at p. 1443.)

On appeal, the defendant contended the instruction was misleading and that "whether possession lasted 'only brief moments' is not the sine qua non of innocent possession as discussed in *Mijares* . . . ." (202 Cal.App.3d at p. 1444.) The appellate court agreed. The court concluded the trial court had a sua sponte duty to modify defendant's requested instruction and suggested the following instruction in the event of a retrial: "If the defendant physically controlled the substance solely for the purpose of its disposal, such possession would not be unlawful even though he knew its nature as a controlled substance. Length of time of possession is one of the factors which may be considered when deciding whether the defendant physically handled the substance solely for disposal." (*Id.* at pp. 1446-1447.)

The trial court here rejected Sullivan's requested instruction because the case did not involve a fleeting possession as occurred in *Mijares.* Sullivan argues, based on *People* v. *Cole,* that this was not a proper reason for denying the instruction since *Cole* held a fleeting possession was not necessary. We disagree. The *Mijares* decision was premised on the fleeting nature of the possession. *Cole* has read the fleeting nature of the possession out of the *Mijares* formula and expanded the scope of the defense.

We think the *Cole* court, by abandoning the requirement the possession be "fleeting," has unreasonably expanded the *Mijares* rule. *Mijares*'s rule arose from a situation involving a fleeting, de minimis possession and a reflexive act of abandonment. The Supreme Court's holding was that this de minimis possession and reflexive response was not a criminal possession this rule is one which is an understandable and simple rule. *Cole* complicates the rule by bringing in inquiries into the defendant's subjective intent in possessing the contraband. These inquiries are not suggested by *Mijares* or supported by the language of the statute. *Mijares*'s focus was on the fleeting nature of the possession (during the instant of abandonment), not on the subjective mental state of the defendant. The statute makes possession illegal without regard to the specific intent in possessing the substance. We conclude the *Cole* court misinterpreted the *Mijares* decision and erred in deleting the "momentary" possession requirement. We therefore decline to follow *Cole,* preferring instead to apply pure *Mijares.*

The Attorney General argues the trial court was not required to give Sullivan's requested instruction because Sullivan's disposal defense "was patently false" and "incredible." Disbelief of a defendant's version of the facts is not, however, a reason for rejecting a requested instruction; it is the

jury's function to weigh the evidence and determine credibility. (See *People v. Lemus, supra,* 203 Cal.App.3d 470, 477.)

 We do agree with the trial court's determination the *Mijares* instruction was not warranted because the facts here do not show a fleeting handling of contraband for the purpose of destroying or abandoning it.

Here, Sullivan's own version of the facts show he made a conscious decision to exercise control and dominion over the methamphetamine for an extended period of time. He did not take merely momentary possession of the methamphetamine while disposing of it, e.g., his possession was not limited to handling the methamphetamine for the few moments it would take to carry it into the house and flush it down the toilet. Instead, Sullivan, as shown by his version of the facts, elected to remove the methamphetamine from the shed and place it in the front seat of his truck, separate from the chemicals and equipment. Later, when stopped by the deputy, Sullivan did not attempt to turn the methamphetamine over to the police but moved the methamphetamine from the front seat of the truck to his pocket to conceal it from the deputy and to retain possession of it. This evidence did not justify Sullivan's requested *Mijares* instruction since the instruction applies only where there is a brief handling of the contraband while disposing of it.

Furthermore, even if we were to adopt the *Cole* position that the disposal defense does not require merely a momentary handling, we would not reverse. Here, the jury was presented evidence and argument on the disposal theory. They found Sullivan guilty not merely of possessing methamphetamine but also of manufacturing methamphetamine and possessing methamphetamine for sale. Thus, the jury necessarily reached the issue of Sullivan's intent in possessing the cocaine. They found he possessed it with the specific intent to sell it, not to dispose of it. Their conviction of Sullivan for manufacturing the methamphetamine also indicates their rejection of his testimony he found the chemicals, equipment and methamphetamine and that his only intent was to dispose of them. Under these circumstances, there exists no reasonable doubt that the jury could have believed Sullivan's defense and yet still convicted him of the offenses because of the court's failure to give the *Mijares* instruction. No reversal is required on this ground.

## II-IV*

* * * * * * * * * * * * * * * * * * * *

*See footnote, *ante,* page 1446.

## DISPOSITION

We reverse Sullivan's conviction for possession of methamphetamine, order stayed his sentence for possession of methamphetamine for sale and order he be given custody credit for the day of his arrest. In all other respects, the judgment is affirmed.

Todd, J., and Huffman, J., concurred.