Filed 9/6/16 P. v. Ray CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MAURICE RAY,<br><br>Defendant and Appellant. | F070436<br><br>(Super. Ct. No. BF155743A)<br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Katharine Eileen Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, R. Todd Marshall and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Gomes, Acting P.J., Poochigian, J. and Peña, J.

Maurice Ray was convicted of possession of methamphetamine for sale, transportation of methamphetamine for sale, and misdemeanor resisting arrest. He argues his conviction must be overturned because there was insufficient evidence to support the two drug charges, and the trial court misinstructed the jury. We affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

The information charged Ray with possession of methamphetamine for the purpose of sale (Health & Saf. Code, § 11378), transportation of methamphetamine for the purpose of sale (Health & Saf. Code, § 11379, subd. (a)), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), felony obstructing or resisting a police officer (Pen. Code, § 69),[1] and misdemeanor resisting arrest (§ 148, subd. (a)(1)). The information also alleged Ray had suffered a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b)-(i) (counts one through four), and had suffered two prior convictions that resulted in a term of imprisonment within the meaning of section 667.5, subdivision (b) (counts one through four). The possession of methamphetamine and the felony obstructing charges were dismissed by the prosecutor prior to the presentation of evidence to the jury.

All of the charges arose out of a single encounter between Ray and Bakersfield Police Officer Travis McNinch. On the date in question, Paul Wolverton observed a man walking near his house in a manner Wolverton found suspicious. Wolverton called the emergency operator to report his concerns. He described the man as wearing a brown jogging suit. At trial, Wolverton identified Ray as the man he saw that day.

McNinch was on patrol in a marked vehicle when he was dispatched to respond to Wolverton's call. He observed Ray, who matched the description McNinch had been given by dispatch, walking in a park. McNinch stopped his vehicle. As he did so, Ray appeared to notice McNinch and walked towards him. When Ray approached, he told

---

[1] Undesignated statutory references are to the Penal Code.

2.

McNinch he was at the park exercising and admiring the landscape in the area. Ray also identified himself and said he was on parole. At this point Ray put his hands in his pockets. This movement caused McNinch concern for his safety and that of the public, so he asked Ray to remove his hands from his pockets. Ray did not comply. Because of his concern, McNinch approached Ray. As McNinch approached, Ray said he had something for McNinch. McNinch ordered Ray to turn away from him and place his hands behind his head. Ray complied with the order. McNinch approached Ray and began a pat down search. After about three to four seconds Ray became extremely agitated and began shouting. McNinch felt Ray begin to tense up, so he decided to place Ray in handcuffs for officer safety. McNinch put one handcuff on Ray without warning, and Ray "violently turned to the left and was trying to pull away from me." Because he had only minimal control over Ray, McNinch shoved Ray away to create distance between the two and called for assistance.

Ray began to quickly walk away. McNinch ordered him to stop with no effect. McNinch then retrieved his canine partner and warned Ray that if he did not stop the animal would be released. Ray stopped and turned to face McNinch and his canine partner. Ray then went to a kneeling position and positioned himself face down on the ground. McNinch waited at his patrol vehicle until other officers arrived. When the officers arrived, McNinch and another officer approached Ray and placed him in handcuffs. Once Ray was secured, he began "to violently roll" from side to side. Ray was ordered to stop moving, but he continued to thrash about and shout. Ray appeared to be grabbing at the back waistband of his pants while he moved around. McNinch finally saw a clear plastic bag on the back of Ray's pants. McNinch seized the plastic bag and placed it on the ground to free his hands to help control Ray. The officers put a restraint device around Ray's legs to prevent him from kicking. Ray finally stopped struggling. McNinch retained the plastic bag which contained a crystalline substance that McNinch

suspected was methamphetamine. The substance was booked into the property evidence room.

Ray was arrested and transported to the county jail. Before he left the scene, and after he was advised of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Ray said the plastic bag contained methamphetamine. Ray explained he recognized the substance as methamphetamine because he had experience with methamphetamine in the past. Ray resisted arrest because he knew he possessed the methamphetamine and he knew the officers would not believe him when he explained how he came into possession of the substance. Ray then explained he found the plastic bag on the ground in the park and approached McNinch with the intent of giving it to him.

During cross-examination, McNinch confirmed that in the preliminary hearing he testified that Ray said he had a substance to turn over to McNinch as Ray initially approached him. McNinch also admitted he knew Ray had something to turn over to him before Ray went to the ground. Therefore, McNinch knew Ray was attempting to give him something before McNinch attempted to handcuff him. McNinch also admitted he did not ask Ray what he wanted to give him, where the item was located, or instruct Ray to slowly remove the item from his person. McNinch admitted he did not describe Ray's turning motion as "violent" at the preliminary hearing.

McNinch confirmed Ray had ample opportunity to dispose of the drugs before he (Ray) arrived at the patrol vehicle. McNinch could not recall Ray stating that a small girl alerted him to the presence of the methamphetamine in the park.

Kern Regional Crime Lab criminalist Renee Peterson confirmed the substance found on Ray contained methamphetamine, and that the weight of the substance itself was 12.12 grams.

Bakersfield Police Detective Lester Vaughan Riddle testified that in his opinion, a hypothetical person who possessed 12.12 grams of methamphetamine in a public park possessed that drug for the purpose of sales.

Ray testified in his defense. He explained that he was in the area on the day in question exercising. As he was walking around to cool down, he noticed a little girl staring at something on the ground. He stopped to look and recognized the item as a package of crystal methamphetamine. He picked up the item using his brown handkerchief. Ray began walking to a police car he had seen in the area to turn the drugs over to the officer.

As Ray approached the patrol vehicle, he told the officer (McNinch) his name, that he was on a six-hour pass, and he had found something he wanted to give to the officer. McNinch got out of his vehicle and began giving Ray orders. McNinch told Ray to remove his hands from his pockets, not to pull anything from his pockets, and informed Ray he was not under arrest. McNinch stated, however, he wanted to pat down Ray for weapons. Ray kept repeating he had something he wanted to give McNinch. McNinch told Ray to turn around and interlace his fingers so he could check Ray for weapons. McNinch repeated that Ray was not under arrest.

Ray complied, and McNinch grabbed his fingers and squeezed them together. McNinch began rubbing on Ray. Ray asked why McNinch was searching him, and told McNinch he wanted to give him something. At about this point McNinch began putting handcuffs on Ray's wrists. Ray looked back at McNinch and asked why he was being handcuffed, since McNinch said he was not going to handcuff him. That is when McNinch pushed Ray away from him. McNinch apparently told Ray that if he moved he could push a button and his K-9 partner would be released. Ray immediately got down on one knee and told McNinch to not release the dog. When he got down on his knees, Ray pulled the bag of drugs out and showed it to McNinch. He had it in his hand until McNinch recovered it. Ray explained to McNinch how he found the bag.

Other officers arrived at the scene a short while later. When the other officers arrived, Ray lay flat on his stomach and put his hands behind his back. One officer put a knee on Ray's back and the other knee on Ray's neck, then handcuffed him. Ray began

5.

rocking from side to side in an attempt to breathe. The officers began attempting to pull Ray's pants down, so Ray tried to prevent them from doing so.

Ray denied the drugs were his, and contended his only intent was to turn the package over to the police.

On cross-examination, Ray denied ever telling an officer that he saw a person throw the bag outside of the window of a vehicle that was driving by. The prosecutor played a recording of an interview between Ray and Bakersfield Police Sergeant Eastman during which Ray said he saw someone throw the bag out of a vehicle. Ray explained that he did not see someone throw the bag out of a vehicle, but that is what the little girl who had been looking at the drugs told him had happened.

Closing argument focused on whether Ray was believable. The evidence was undisputed that Ray possessed the 12 grams of methamphetamine, that Ray approached McNinch, Ray identified himself, Ray told McNinch he was on parole, and at one point in the conversation Ray told McNinch he had something for him. However, the prosecutor argued that Ray told McNinch he had something for him only after a 20-30 second delay, and asserted that Ray made this statement only because he knew the methamphetamine was about to be discovered. The prosecutor also asserted that other than the facts McNinch corroborated, Ray's testimony should be disbelieved.

Defense counsel argued that Ray was attempting to do the right thing, and McNinch overreacted to the events thereby upsetting Ray and leading to the confrontation. Defense counsel urged the jury to find Ray not guilty, arguing the confrontation occurred because once McNinch learned Ray was on parole, he was determined to find a reason to arrest him.

The jury found Ray guilty of the charges presented to it (possession of methamphetamine for the purpose of sale, transportation of methamphetamine for the purpose of sale, and misdemeanor resisting arrest). Ray waived his right to a jury trial on the enhancement allegations. The trial court found true the enhancement allegations.

6.

Ray was sentenced to the upper term of four years on count two, doubled because of the strike prior, and two additional years for the two prior prison term enhancements, for a total term of 10 years.

DISCUSSION

Ray asserts his conviction must be overturned for three reasons. We begin with his argument that there was insufficient evidence to support the convictions.

*Sufficiency of the Evidence*

When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Elliott* (2013) 53 Cal.4th 535, 585.) Our review must presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) Even where the evidence of guilt is largely circumstantial, our task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might reasonably be reconciled with the defendant's innocence. (*Id.* at p. 92; *People v. Maury* (2003) 30 Cal.4th 342, 403.) It is the duty of the jury to acquit the defendant if it finds the circumstantial evidence is susceptible to two interpretations, one of which suggests guilt and the other innocence. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) But the relevant inquiry on appeal is whether, in light of all the evidence, "*any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Towler* (1982) 31 Cal.3d 105, 118.)

Ray argues that under the circumstances of this case a reasonable trier of fact could only conclude that Ray possessed the methamphetamine for a short amount of time and with the intent to turn it over to the police for destruction. He points out that he approached McNinch voluntarily, told him his identity and that he was on parole, and informed McNinch he had something to give him, i.e. the methamphetamine.

7.

The jury, however, was not obligated to accept Ray's interpretation of the events. The jury apparently chose to reject Ray's testimony as unbelievable. In doing so, the jury could reasonably infer that Ray possessed the methamphetamine to sell, but when he saw the police vehicles in the area he decided he needed to dispose of it. It is true that if Ray possessed the methamphetamine for sale, he could have avoided arrest by disposing of the methamphetamine in the bathroom, or by spreading it around on the ground. However, the jury did not have to conclude that because Ray approached McNinch with the methamphetamine he must have found it on the ground as he testified. Instead, the jury could have concluded that Ray approached McNinch and volunteered his name and parole status in an attempt to gain McNinch's trust and thereby retain the methamphetamine. However, when McNinch told Ray he was going to be searched, Ray may have decided to turn the methamphetamine over to McNinch and claim he found it.

Since the evidence was undisputed that the amount of methamphetamine was such that it was possessed for the purpose of sale, and the jury was not required to accept Ray's testimony that his intent was innocent, there was substantial evidence to support the verdict.

*CALJIC No. 4.45*

The primary issue in this case was Ray's intent when he possessed the methamphetamine; did he possess the methamphetamine for sale, or did he find the methamphetamine and intend to immediately turn the drug over to the police for the safety of the public? Apparently on its own motion, and consistent with this argument, the trial court instructed the jury with CALJIC No. 4.45 as follows: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show no criminal intent or purpose, he does not thereby commit a crime."

Ray argues this instruction should not have been given because there is no evidence he accidentally possessed the methamphetamine, or that he somehow came to possess it through misfortune.

We begin by noting that defense counsel never lodged any objection to this instruction, and even referred to this instruction in his closing argument. Any claim of error in giving the instruction has therefore been forfeited. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1260.)

Even were we to proceed to the merits of the argument, and assume for the sake of argument the instruction was not supported by the evidence, we would conclude that Ray did not suffer any possible prejudice. The jury was instructed that not all instructions may apply, and it should "[d]isregard any instruction which applies to facts determined by you not to exist." Since the jury apparently concluded that Ray did not acquire the methamphetamine through accident or misfortune, which it must have done to find him guilty, it undoubtedly disregarded the instruction in its entirety.

Ray does not adequately address the issue of prejudice, instead suggesting the instruction may have confused the jury. We fail to see how the jury could have been confused and conclude Ray did not suffer any prejudice even if the instruction should not have been given.

*CALJIC No. 12.06*

As stated above, Ray's defense was based on the proposition that he found the methamphetamine in the park and was attempting to give it to McNinch when he was arrested. Consistent with this defense, the trial court instructed the jury with CALJIC No. 12.06 which stated:

"A person is not guilty of a crime when his possession of methamphetamine is shown to be lawful. The defendant has the burden of proving by a preponderance of the evidence all of the facts necessary to establish that his possession of the

9.

methamphetamine is lawful. [¶] The possession of methamphetamine is lawful where all of the following conditions are met:

1. The possession is momentary and is not based on either ownership or the right to exercise control over the methamphetamine;

2. The methamphetamine is possessed solely for the purpose of abandonment, disposal, or destruction;

3. The methamphetamine is possessed for the purpose of preventing another person from acquiring possession of it;

4. Control is not exercised over the methamphetamine for the purpose of preventing law enforcement from obtaining the methamphetamine, and

5. The abandonment, disposal, or destruction was voluntary, that is, not simply to avoid arrest."

The trial court then defined preponderance of the evidence with CALJIC No. 2.50.2 as follows:

" ' Preponderance of the evidence' means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it. [¶] You should consider all of the evidence bearing upon every issue regardless of who produced it."

Ray argues the trial court erred because it should have instructed the jury with CALCRIM No. 2305 which, in Ray's opinion, is a superior instruction on this defense, and which states:

"If you conclude that the defendant possessed [the methamphetamine], that possession was not illegal if the defendant can prove the defense of momentary possession. In order to establish this defense, the defendant must prove that:

1. The defendant possessed [the methamphetamine] only for a momentary or transitory period;

10.

2. The defendant possessed [the methamphetamine] in order to abandon, or dispose of, or destroy it;

AND

3. The defendant did not intend to prevent law enforcement officials from obtaining [the methamphetamine].

The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard of proof than proof beyond a reasonable doubt. To meet the burden of proof by a preponderance of the evidence, the defendant must prove that it is more likely than not that each of the three listed items is true." (CALCRIM No. 2305.)

Ray identifies three differences between the CALJIC and CALCRIM versions of the instruction which he asserts constitute reversible error. The first difference is found in the first element of the defense. CALJIC No. 12.06 describes this element as "The possession is momentary and is not based on either ownership or the right to exercise control over the methamphetamine," while CALCRIM No. 2305 describes this element as "The defendant possessed [the methamphetamine] only for a momentary or transitory period." Ray argues CALCRIM No. 2305's description of this element is superior because it includes the phrase "transitory period" which, according to Ray, indicates a longer period of time than a momentary period of time. Ray then cites various cases which apparently concluded that two hours, four hours, and two days were all determined to be a longer period of time than permitted by the defense. (*People v. Martin* (2001) 25 Cal.4th 1180, 1192-1193 (*Martin*); *People v. Frazier* (1998) 63 Cal.App.4th 1307, 1312; *People v. Hurtado* (1996) 47 Cal.App.4th 805, 814.)

We reject Ray's attempt to find error with this instruction by parsing it into small phrases. The evidence, if believed by the jury, was that Ray possessed the methamphetamine for a very short period of time, presumably less than 10 minutes. It is clear that regardless of how the first element of the defense was defined, if the jury

11.

believed Ray's testimony it would have concluded his possession of the methamphetamine was momentary. Moreover, we reject the contention the jury would have interpreted "momentary or transitory period" as defining a longer period of time than momentary possession. Accordingly, CALJIC No. 12.06 properly defined the first element of the defense.

We also note the issue at trial was not whether Ray possessed the methamphetamine for a momentary period of time. The prosecutor did not argue the defense should be rejected because Ray's possession of the methamphetamine was more than momentary. Instead, the prosecutor argued Ray's testimony should be rejected because Ray was untruthful. Accordingly, even if there was error, which there was not, then the error was not prejudicial under any standard of review.

The second issue identified by Ray involves the third element of the defense in CALJIC No. 12.06, which states "The methamphetamine is possessed for the purpose of preventing another person from acquiring possession of it." Ray points out this element is not included in CALCRIM No. 2305, and asserts it is an incorrect statement of the law. He relies on the use note to CALCRIM No. 2305, which cites *Martin* as authority for the proposition that the momentary possession defense does not require the drug be possessed to prevent another from possessing it. We agree that nothing in *Martin* requires the drug be possessed to prevent another from possessing it, but note the issue was not directly addressed by the Supreme Court. *Martin*'s holding, however, is quite clear: "We conclude that the defense of transitory possession devised in [*People v. Mijares* (1971) 6 Cal.3d 415] applies only to momentary or transitory possession of contraband for the purpose of disposal, and that the trial court did not err in refusing defendant's requested instruction based on the holding in [*People v. Cole* (1988) 202 Cal.App.3d 1439]. To the extent *People v. Cole, supra,* 202 Cal.App.3d 1439, and [*People v. Spry* (1997) 58 Cal.App.4th 1345], are inconsistent with the views expressed herein, they are disapproved." (*Martin, supra,* 25 Cal.4th at pp. 1191-1192.)

12.

*Martin* makes clear the defense is limited to momentary possession for the purpose of disposing of an illegal substance. Therefore, CALJIC No. 12.06 apparently incorrectly requires the controlled substance be possessed for the purpose of preventing another from possessing it.

Nonetheless, assuming the instruction was erroneous, the error is harmless. Once again, we turn to Ray's testimony. Ray testified he first observed a young girl staring at the methamphetamine as it lay on the ground. He recognized the substance as methamphetamine, and told the girl not to touch the bag. Ray picked up the bag so that the young girl, or other children, would not pick up the methamphetamine. Therefore, had the jury believed Ray's testimony, this element of the defense would not have prevented the jury from returning a not guilty verdict. Once again, we note the prosecutor did not argue this element was not proven, and that the jury must therefore reject Ray's defense.

The third issue identified by Ray is the absence of a definition of "preponderance of the evidence" in CALJIC No. 12.06. Ray points out that CALCRIM No. 2305 includes the definition of this term, while the trial court was required to include the definition of the term by adding CALJIC No. 2.50.2. Ray argues the definition of "preponderance of the evidence" in CALCRIM No. 2305 differs in two ways from the definition in CALJIC 2.50.2. First, according to Ray, the definition in CALCRIM No. 2305 is "more concise and easier to understand." Second, CALCRIM No. 2305 informs the jurors that it is a different standard of proof than beyond a reasonable doubt, which CALJIC No. 2.50.2 does not. Once again, we reject this parsing of the instructions. CALJIC No. 12.06 informed the jury that Ray was required to prove the element of the defense by a preponderance of the evidence, and CALJIC No. 2.50.2 adequately defined the standard of proof. No error occurred.

13.

Ray concludes by arguing the cumulative effect of the purported instructional errors requires reversal. Since we have found only a single instructional error, and have concluded that error was not prejudicial, we reject Ray's cumulative prejudice argument.

## DISPOSITION

The judgment is affirmed.