[No. H014250. Sixth Dist. July 19, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK JAVIER HURTADO, Defendant and Appellant.

## COUNSEL

Eileen S. Kotler, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Seth K. Schalit, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

COTTLE, P. J.—Defendant Frank Javier Hurtado was charged by information with being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a)),[1] carrying a concealed firearm in a vehicle (§ 12025, subd. (a)(1)), carrying a loaded firearm in a vehicle (§ 12031, subd. (a)(1)), and driving

---

[1]All further statutory references are to the Penal Code unless otherwise specified.

with a suspended license (Veh. Code, § 14601.1). The information alleged defendant had served a prior prison term (§ 667.5, subd. (b)) and was subject to the three strikes law (§§ 667, subds. (b)-(i), 1170.12). After defendant pleaded guilty to driving on a suspended license, a jury found him not guilty of being a felon in possession of a firearm and guilty of carrying a concealed firearm and carrying a loaded firearm. In a separate proceeding, the trial court found the section 667.5, subdivision (b) enhancement true. The court sentenced defendant to 32 months in state prison. On appeal defendant contends the trial court committed instructional error by (1) failing to instruct, pursuant to CALJIC No. 12.06, that temporary possession for disposal can be a defense to carrying a concealed and a loaded weapon, and (2) giving the new version of CALJIC No. 2.90 on reasonable doubt. He contends the trial court also committed sentencing error by (1) using his prior burglary conviction both to make the crime of carrying a concealed weapon in a vehicle into a felony and as a first strike, and (2) imposing a concurrent sentence for carrying a loaded weapon in violation of section 654.

## FACTS

In January 1995,[2] defendant lived on Waterman Court in San Jose with his girlfriend Christina Avila and her son, 11-year-old Willy Menchaca. While walking home on or about January 3, Willy found a chrome-colored gun with two bullets in the open cylinder and two more bullets on the ground. Willy closed the cylinder, put the gun in his belt, picked up the two bullets from the ground, and put them in his pocket. When he returned home, Willy gave the gun and extra bullets to defendant. Defendant opened and closed the cylinder and then told Willy to go play and that he would "take care" of the gun.

When Avila returned from work, defendant picked the gun up from a counter in the garage and showed it to her. Avila, who has two children and whose younger brother was killed with a gun, became very upset, and told him to "[g]et it away" from the house. Defendant said "fine," that "he'd take care of it for [Avila]."

Avila next saw the gun on January 6; it was on the garage counter wrapped in a towel. Defendant and Avila argued in the garage; she wanted him to leave with the gun in order to get it out of the house. Defendant wanted Avila to take the gun out herself.

Defendant's sister, Miriam Avalos, was at the house when defendant and Avila were arguing. Defendant told Avalos how Willy had found the gun.

---

[2]All further calendar references are to 1995.

Defendant said he was "going to get rid of it" but did not know what to do. He added he was afraid to take it to police, not knowing whether the weapon had been used in a crime and knowing that his fingerprints might now be on the gun. Avalos asked defendant to get rid of the gun, inquiring, "Why don't you turn it into the cops?" Defendant said, "That's what I've been trying to do" and asked Avalos to take it for him. Similarly concerned with the gun's history, Avalos refused to do so. When Avalos asked if he knew whether the gun was loaded, defendant said, " 'I don't know.' "

After this conversation, defendant went to his car, put the gun in his gym bag, and put the bag back in the car, telling Avalos, " 'I know about the three strikes law. I'm not stupid enough to do anything stupid with it.' . . .' "

At 5:15 p.m. on January 6, defendant was driving Avila's car when Santa Clara County Deputy Sheriff Contreras stopped him for a traffic violation. When Contreras informed defendant the car was going to be towed,[3] defendant asked "[n]umerous times" if he could retrieve his gym bag from the car. The bag was behind the driver's seat, slightly to the right. Before the deputy opened the bag to perform an inventory, defendant stated, " 'it's just got my shower stuff.' " In fact, it contained a variety of personal items and, on the top, a .38-caliber chrome revolver. Five of the six chambers were loaded.

Contreras testified that, "as part of police practice in general," a police officer would go to someone's house and pick up and dispose of a gun if asked to do so, even if the citizen identified himself as a felon.

The parties stipulated defendant previously had been convicted of a felony.

Defendant did not testify.

## DISCUSSION

*Instructions Regarding Temporary Possession*

Defendant contends the trial court should have instructed the jury that temporary possession for purposes of disposal was a defense to the two carrying charges, instead of limiting the temporary possession defense to the felon in possession charge, because "the concept of possession is implicit in the definition of . . . 'carrying' a firearm."

---

[3] We find nothing in the evidence presented at trial which explains why Deputy Contreras decided to have Avila's car towed. However, the fact defendant subsequently was charged with driving with a suspended license may provide an explanation for that decision.

The law is not settled with regard to whether a felon in possession of a firearm is entitled to a temporary possession for disposal defense. The law is similarly unsettled as to the scope of that defense, assuming a felon is entitled to it at all. Before reaching the issue whether defendant was entitled to instructions on a temporary possession for disposal defense regarding carrying a concealed or a loaded weapon, we first consider whether the trial court in this case was required to give such an instruction for the felon in possession of a firearm charge.

The defense of temporary possession for purposes of disposal arose from *People* v. *Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115]. There, the "principal question presented [was] whether the act of handling a narcotic for the sole purpose of disposal constitutes 'possession' within the meaning of" former Health and Safety Code section 11500. (6 Cal.3d at p. 417.) The defendant in *Mijares* removed an object from the pocket of the passenger in his car and threw it into a field. He then drove his friend, who was suffering from a heroin overdose, to a fire station. The victim was taken away by ambulance. The defendant shouted his license plate number to a fireman and left, only to return in less than a minute and wait for the police. The authorities recovered the object tossed into the field and concluded it contained heroin and related paraphernalia. (*Id.*, at pp. 417-418.) The Supreme Court noted that "in throwing the heroin out of the car, [the defendant] maintained momentary possession for the sole purpose of putting an end to the unlawful possession of [the passenger]." (*Id.*, at p. 420.) However, the physical control inherent "during the brief moment involved in abandoning the narcotic" was not possession for purposes of the statute. (*Id.*, at p. 422.)[4] The court reasoned that if such transitory control were to constitute possession, "manifest injustice to admittedly innocent individuals" could result. (*Ibid.*) As an example, the court referred to the witness who saw the defendant throw the object. Had she "briefly picked up the package and identified the substance as heroin and then placed the outfit back on the ground, during the time after she had realized its narcotic character she, too, would have been guilty of possession under an unduly strict reading [of the statute], notwithstanding the fact that her transitory handling of the contraband might have been motivated solely by curiosity." (*Ibid.*) The court refused to "read the possession statutes to authorize convictions under such guileless circumstances." (*Ibid.*)

*Mijares* was the impetus for the initial version of CALJIC No. 12.06, "MOMENTARY POSSESSION AS NOT UNLAWFUL," which provided that possession of an item is not unlawful where all four of the following conditions

---

[4]The court quoted with approval the definition of possession as having " ' "actual control, care and management of, and not a passing control, fleeting and shadowy in its nature." ' " (*People* v. *Mijares, supra,* 6 Cal.3d at p. 420.)

were met: (1) possession is "momentary" and "based on neither ownership nor the right to exercise control over" the item; (2) the item is "possessed in furtherance of its abandonment or destruction"; (3) the item is possessed "for the purpose of terminating the unlawful possession of it by another person or preventing another person from acquiring possession of it"; and (4) "control is not exercised over the [item] for the purpose of preventing its imminent seizure by law enforcement." (CALJIC No. 12.06 (5th ed. bound vol.).)[5]

Citing *Mijares*, the California Supreme Court in *People* v. *King* (1978) 22 Cal.3d 12, 24 [148 Cal.Rptr. 409, 582 P.2d 1000], held that it was a defense to a charge of possession of a firearm by a felon that the possession was in self-defense. In *People* v. *Booker* (1978) 77 Cal.App.3d 223, 225 [143 Cal.Rptr. 482], the Second District held that a felon who, at his sister's request, took her revolver to a pawnshop to sell it, was not entitled to a "momentary possession" instruction because his possession of the revolver as he walked four blocks to the pawnshop was not "momentary" within the meaning of *Mijares*.

CALJIC No. 12.06 was revised in 1989 based on *People* v. *Cole* (1988) 202 Cal.App.3d 1439 [249 Cal.Rptr. 601], in which the Second District concluded that the holding of *Mijares* "is not limited to possession for 'brief moments' only, but that possession of illegal drugs solely for the purpose of disposal does not constitute unlawful possession." (*Id.*, at p. 1445, italics omitted.) Cole's defense was that he had seized cocaine from his teenage daughter and had placed it in his safe while he and his wife decided how to dispose of it. The cocaine was found in the safe by police a day later. (*Id.*, at p. 1442.) The court concluded that the trial court had erred by giving instructions by which the jury might have accepted Cole's claim that he had only "momentarily handled the cocaine for purposes of disposal or abandonment" yet felt compelled to convict him because "the drugs were in his constructive possession in the safe for more than 'brief moments. . . .' " (*Id.*, at p. 1445.)

The revised instruction, renamed "POSSESSION-NOT UNLAWFUL," deleted reference to "momentary possession" and added a paragraph stating, "Length of time of possession is one of the factors that may be considered in deciding whether the defendant physically handled the substance solely for abandonment, disposal, or destruction." (CALJIC No. 12.06 (1989 rev.).)

While the Comment to the 1989 version of CALJIC No. 12.06 advises that the revision is based on *Cole*'s conclusion that ". . . while *People* v. *Mijares*

---

[5]This version of CALJIC No. 12.06 was given by the trial court in conjunction with the ex-felon in possession of a firearm charge.

factually only involved a momentary handling, . . . the critical issue was not the length of time of the handling but whether the defendant physically handled the substance solely for the purpose of disposal," the Use Note to the 1989 version advises that "[i]n *People* v. *Sullivan* (1989) 215 C.A.3d 1446, . . . the court took issue with [*Cole*], and concluded that decision unreasonably extended the *Mijares* rule." The Use Note then explains that "[a]s a result, there is a split in appellate authority and the trial court must choose between CALJIC 12.06, as found in the bound volume, and the 1989 revision, which is based upon the Cole case." (Use Note and Comment to CALJIC No. 12.06 (1989 rev.) (5th ed. pocket pt.) pp. 10-11.)

As noted above, *People* v. *Sullivan* (1989) 215 Cal.App.3d 1446 [264 Cal.Rptr. 284], disagreed with *Cole*'s treatment of *Mijares*. The Fourth District *Sullivan* court reasoned as follows: "The *Mijares* decision was premised on the fleeting nature of the possession. *Cole* has read the fleeting nature of the possession out of the *Mijares* formula and expanded the scope of the defense." (*Id.*, at p. 1452.) "*Mijares*'s rule arose from a situation involving a fleeting, de minimis possession and a reflexive act of abandonment. The Supreme Court's holding was that this de minimis possession and reflexive response was not a criminal possession[.] [T]his rule is one which is an understandable and simple rule. *Cole* complicates the rule by bringing in inquiries into the defendant's subjective intent in possessing the contraband. These inquiries are not suggested by *Mijares* or supported by the language of the statute. *Mijares*'s focus was on the fleeting nature of the possession (during the instant of abandonment), not on the subjective mental state of the defendant. The statute makes possession illegal without regard to the specific intent in possessing the substance. We conclude the *Cole* court misinterpreted the *Mijares* decision and erred in deleting the 'momentary' possession requirement. We therefore decline to follow *Cole*, preferring instead to apply pure *Mijares*." (*Ibid.*)

Since *Cole* and *Sullivan* the Third District Court of Appeal ruled in *People* v. *Pepper* (1996) 41 Cal.App.4th 1029 [48 Cal.Rptr.2d 877], that a felon charged with violating section 12021 cannot ever claim transitory possession for disposal as a defense. The defendant in *Pepper* claimed that while he and a one-year-old baby were on the floor watching television, he saw a rifle under the bed. The defendant wanted to move the rifle so the infant would not touch it. As the defendant was placing the rifle on the bed, it discharged, wounding the baby. (41 Cal.App.4th at p. 1033.) The court rejected the defendant's claim, based on *Mijares*, that "he was entitled to an instruction that mere transitory possession of a firearm is insufficient to establish a violation of section 12021" (*id.* at p. 1036), reasoning that ". . . this is not a case where a convicted felon possessed the rifle momentarily solely to

prevent its illegal possession by another; and such possession nonetheless violates . . . section 12021. As a matter of public policy, the Legislature has made it a crime for convicted felons to possess firearms. (§ 12021, subd. (a)(1).) The purpose of this law is to protect public welfare by precluding the possession of guns by those who are more likely to use them for improper purposes. [Citation.] Due to the potential for death or great bodily injury from the improper use of firearms, public policy generally abhors even momentary possession of guns by convicted felons who, the Legislature has found, are more likely to misuse them. Criminalizing the transitory possession of firearms by convicted felons in circumstances that do not satisfy the elements of self-defense, defense of others, or legal necessity is not likely to result in 'manifest injustice to admittedly innocent individuals.' [Citation.] Unlike controlled substances which the general public is not permitted to have without specific authorization by law, firearms are lawful to possess subject to specific exceptions set forth by the Legislature (e.g. §§ 12020, 12021). Hence, the momentary handling of a firearm to prevent its illegal possession by another ordinarily would not subject a member of the general public to criminal sanctions. To the extent a convicted felon's transitory possession of a firearm for that purpose constitutes a crime, the law favors this result due to the grave threat to public safety posed by even the momentary possession of firearms by persons who, once in possession of guns, are more likely to use them for improper purposes. Balancing the competing evils, nothing is gained by permitting a convicted felon to possess a gun in order to prevent its unlawful possession by another, since the Legislature necessarily has found that the threat to public safety is the same under either circumstance." (*Id.* at pp. 1037-1038.)

Accordingly, the court in *Pepper* concluded that ". . . section 12021 prohibits a convicted felon from possessing a firearm even momentarily except in self-defense, in defense of others, or as a result of legal necessity" and that "[b]ecause his taking hold of the rifle purportedly for the sole purpose of protecting a child from a perceived danger posed by the gun's presence does not satisfy the elements of any of these exceptions, defendant was not entitled to an instruction that his transitory possession of the gun for that purpose, if believed by the jury, would constitute a defense to the charge he violated section 12021." (41 Cal.App.4th at p. 1038.)

We do not adopt the strict liability approach set forth in *Pepper*. Initially, we note that in *People* v. *King, supra,* 22 Cal.3d 12, the California Supreme Court provided some indication that defenses to possession offenses apply to both drug possession and firearm possession by felon offenses. Moreover, we are unpersuaded by Pepper's insistence that it is important that the statute prohibiting possession of a firearm by a felon facially extends as far as brief

possessions. As discussed above, while the statutes prohibiting possession of illegal drugs also facially extended to brief possession of those drugs, the California Supreme Court in *Mijares* explained that a brief possession solely for disposal purposes was a defense. Firearms and controlled substances are admittedly dangerous items; it is the retention of these items, rather than the brief possession for disposal or self-protection, which poses the danger which is criminalized by the relevant statutes. We are convinced the "momentary possession" defense recognized in *Mijares* extends to possession of a firearm by a felon offenses.

Like the trial court in this case, we also find the *Sullivan* analysis persuasive. Recognition of the "momentary possession" defense serves the purpose of encouraging disposal and discouraging retention of dangerous items such as controlled substances and firearms. However, expansion of the defense to lengthier possession incidental to a defendant's "intent" to dispose of those items rewrites the statutory requirements by introducing a new element of "specific intent to retain." We are not authorized to so revise the Legislature's description of a criminal offense. Therefore, in a case in which a defendant is entitled to an instruction on temporary possession for disposal, we conclude the trial court should instruct pursuant to the original version of CALJIC No. 12.06 based upon *Mijares*.

The next question we face is whether the defendant here was entitled to the temporary possession for disposal defense and corresponding *Mijares*-based instruction under the undisputed facts of his case.

Although the trial court agreed with *Sullivan* and also recognized that the fact defendant had the gun and bullets for "somewhere in the range of 2 to 4 days" meant "dominion and control were exercised over [the items] for an extended period of time," it decided to give the *Mijares*-based CALJIC No. 12.06 because defendant's "whole defense [was] relying on that."

However, we conclude that, under *Mijares* and *Sullivan*, defendant was not entitled to the instruction on the possession charge because, as a matter of law, defendant's possession of the firearm cannot be characterized as momentary. Defendant maintained control over the gun for at least two days, during which time he loaded the weapon and was free to use it in any way he saw fit. Defendant's conduct in continuing to maintain dominion and control over the weapon for days vitiated any initial entitlement to a temporary possession for disposal defense to the felon in possession of a firearm charge.

Since defendant's claim that he was entitled to the temporary possession for disposal defense on the two carrying charges rests upon his assertion that

"the concept of possession is implicit in the definition of" those two offenses and since defendant was not entitled to the disposal defense on the felon in possession charge, defendant similarly cannot be lawfully excused from the carrying charges based upon a temporary possession for disposal defense.

The court below thus erroneously instructed on transitory possession. Defendant is not entitled to compound that error by extending the application of the instruction to the two carrying counts. (See *Strickland* v. *Washington* (1984) 466 U.S. 668, 695 [80 L.Ed.2d 674, 698, 104 S.Ct. 2052] ["An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of . . . 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed."].)

For the reasons stated above, we conclude the trial court properly refused to instruct on transitory possession for disposal as a defense to the two carrying charges.

*CALJIC No. 2.90*

■ Defendant contends the trial court gave an erroneous reasonable doubt instruction when it instructed pursuant to new CAIJIC No. 2.90, which eliminated the terms "moral evidence" and "moral certainty." (See also § 1096.) He argues that defining reasonable doubt in terms of an abiding conviction does not provide "an adequate or identifiable standard" and may be confused with the clear and convincing evidence standard.

In upholding California's standard reasonable doubt instruction, the United States Supreme Court criticized the use of the phrase "moral certainty" in the instruction. (*Victor* v. *Nebraska* (1994) 511 U.S. 1, __ [127 L.Ed.2d 583, 698, 114 S.Ct. 1239].) In *People* v. *Freeman* (1994) 8 Cal.4th 450, 504 [34 Cal.Rptr.2d 558, 882 P.2d 249, 31 A.L.R.5th 888], the California Supreme Court said that "trial courts might, in the future, safely delete the following phrases in the standard instruction: 'and depending on moral evidence,' and 'to a moral certainty.' " CALJIC No. 2.90 has been revised as suggested in *Freeman* (CALJIC No. 2.90 (1994 rev.) (5th ed. 1995 Supp.) p. 34), as has the definition of reasonable doubt in section 1096.

The trial court instructed the jury as *Freeman* proposed, and defendant claims this was a denial of his federal constitutional right to due process because the revised CALJIC No. 2.90 reduces the prosecution's required burden of proof.

"[T]he dicta of our Supreme Court are highly persuasive." (*Evans* v. *City of Bakersfield* (1994) 22 Cal.App.4th 321, 328 [27 Cal.Rptr.2d 406].) In *Freeman*, our Supreme Court took great care in suggesting changes to CALJIC No. 2.90 that would shore up its constitutionality, and concluded that these changes, while not required, were "permissible." (*People* v. *Freeman, supra,* 8 Cal.4th at p. 504.) We presume the court's suggestions were not inadvertent or ill considered. (See *In re Brittany M.* (1993) 19 Cal.App.4th 1396, 1403 [24 Cal.Rptr.2d 57].) If there is to be any retreat from *Freeman*, it should come from the California Supreme Court, not us. We conclude, based on the pronouncements in *Freeman*, that the instruction given here satisfies federal due process concerns.

*Sentencing Under Three Strikes*

■ Defendant contends he was improperly sentenced under the three strikes law. He claims the court could not enhance his sentence under section 12025, subdivision (b), which makes carrying a concealed weapon a felony if the defendant had a previous felony conviction, and also enhance his sentence pursuant to the three strikes law. According to defendant, doing so violates section 654 and *People* v. *Jones* (1993) 5 Cal.4th 1142 [22 Cal.Rptr.2d 753, 857 P.2d 1163].

This argument is indistinguishable from the frequently made argument that a court cannot, under section 654 and *Jones*, use a previous felony conviction to impose a five-year enhancement under section 667, subdivision (a), and to invoke the three strikes law. This argument has been repeatedly rejected because the three strikes law is not an enhancement and because the legislative intent behind the three strikes law is such that section 654 and *Jones* are inapplicable. (See, e.g., *People* v. *Murillo* (1995) 39 Cal.App.4th 1298, 1306-1307 [46 Cal.Rptr.2d 403]; *People* v. *Cartwright* (1995) 39 Cal.App.4th 1123, 1137-1139 [46 Cal.Rptr.2d 351]; *People* v. *Anderson* (1995) 35 Cal.App.4th 587, 592-600 [41 Cal.Rptr.2d 474]; *People* v. *Ramirez* (1995) 33 Cal.App.4th 559 [39 Cal.Rptr.2d 374].) For the reasons stated in the above cases, we reject defendant's claim of error.

*Staying the Six-month Term*

The People correctly concede the merit of defendant's contention that his six-month sentence for carrying a loaded weapon should have been stayed pursuant to section 654. (Cf. *In re Joseph G.* (1995) 32 Cal.App.4th 1735, 1743-1744 [38 Cal.Rptr.2d 902].)

## DISPOSITION

The judgment is modified, pursuant to section 654, to stay the sentence for carrying a loaded firearm in a vehicle (Veh. Code, § 12031, subd. (a)(1)). As modified, the judgment is affirmed.

Bamattre-Manoukian, J., and Mihara, J., concurred.

A petition for a rehearing was denied August 6, 1996.