**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 5, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TE'AIRE ELGIN CURLS,

Defendant-Appellant.

No. 06-5124

(N.D. Oklahoma)

(D.C. No. 05-CR-127-HDC)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.[**]

Te'Aire Curls was convicted, after a jury trial, of two counts of possession

of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g). The

district court sentenced him to two concurrent terms of 120 months'

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1and 10th Cir. R. 32.1.

[**]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(F) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

imprisonment, followed by two concurrent terms of thirty-six months' supervised release.

In this appeal, Mr. Curls argues that the district court erred in denying his motions (1) to dismiss the superceding indictment on the grounds that the indictment appearing in the public file was not signed by the grand jury foreman; (2) to dismiss the indictment because of multiplicity; (3) to suppress evidence; and (4) to hold an evidentiary hearing regarding his allegation of juror misconduct. Mr. Curls also contends that the court erred in (5) refusing to instruct the jury on the defense theory of innocent possession; and (6) imposing a two-level increase in the offense level for obstruction of justice pursuant to § 3C1.1 of the United States Sentencing Guidelines. Finally, Mr. Curls argues that (7) his sentence is unreasonable.

We are not persuaded by Mr. Curls's arguments and therefore affirm his convictions and sentences.

## I. BACKGROUND

On June 8, 2005, officers from the Fugitive Warrants Squad of the Tulsa Police Department, assisted by an agent from the United States Bureau of Alcohol, Tobacco, and Firearms and a Deputy United States Marshal, stopped a car in which Mr. Curls was riding. They mistakenly believed that the driver of the car, Emmanuel Baxter, was Sean Ali Williams, a gang member with an

-2-

outstanding felony arrest warrant. According to the officers, Mr. Baxter's appearance resembled a description that they had obtained for Mr. Williams.

The officers approached the car with their weapons drawn, handcuffed Mr. Baxter and Mr. Curls, and then holstered their weapons. The ATF agent asked Mr. Curls who owned the car and who the driver was. Mr. Curls responded that it was his mother's car and that the driver was Mr. Baxter, his cousin. The agent then asked Mr. Curls "if he had anything in the car he shouldn't have." Rec. vol IX, at 12. Mr. Curls said no, and the agent next asked him "did he mind if we searched?" Id. Mr. Curls said, "[N]o, go ahead." Id. As one of the officers began to enter the car, Mr. Curls told the ATF agent that there was a gun in the center console. The officer proceeded to search the car and discovered a .32 caliber revolver with an obliterated serial number.

The officers transported Mr. Curls and Mr. Baxter to the Detective Division of the Tulsa Police Department. Mr. Curls signed a form waiving his Miranda rights and then spoke to the ATF agent about his possession of the revolver. He stated that he had purchased the weapon from a friend in order to protect himself because he had recently been robbed of $1,400 while leaving a casino. Mr. Curls also wrote a statement containing the same information.

Police officers determined that Mr. Baxter was not the man they were searching for, and they released him from custody. The government charged Mr.

Curls in a one-count indictment with possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g).

Prior to trial, Mr. Curls moved to suppress the firearm and ammunition discovered in the car. He argued that the law enforcement officers lacked reasonable suspicion to detain him on the grounds that they thought that Mr. Baxter was Mr. Williams.

After conducting an evidentiary hearing, the district court denied the motion to suppress. It noted the similarities in Mr. Williams's and Mr. Baxter's appearance:

> In looking at the photographs and the description of the characteristics of the individuals, it is apparent how their similarity would cause a trained officer to be of the reasonable belief . . . that the driver of the vehicle was in fact Mr. Williams who was wanted from a felony warrant that was outstanding at the time. And it's the Court's belief that with that, with reason to believe that and having the experience that Agent Petree has, that he acted reasonably in the stop. He actually was trying to get the other two officers, the backup officers[,] to also take a look to verify it to be careful. That shows in and of itself that he was not attempting to just willy-nilly . . . stop people. . . . And as is said, there's no challenge to any other actions the officers made[,] and, therefore, the Court finds that it was a reasonable stop based upon a reasonable belief by the officer.

Rec. vol. III, at 49-50.

The case was tried to a jury in October 2005. Mr. Curls testified in his own defense. He stated that, on the day before his arrest, he had discovered the

-4-

firearm on the floor in his mother's apartment. According to Mr. Curls, he handed the firearm to Allan Dansby, a cousin who was living in Mr. Curls's mother's apartment, and told him to get it out of the house. The jury was unable to reach a verdict, and the district court declared a mistrial.

Mr. Curls then filed a motion to dismiss the indictment. He argued that his attorney "ha[d] been informed by a spectator, a member of this Court's bar, that at least one court guard, and possibly two, sitting directly across the courtroom, in full view of the jury, was obviously laughing and scoffing during the closing argument of the Defendant." Rec. vol. I, doc. 53, at 1. Mr. Curls asked for an evidentiary hearing on the motion, but the district court denied the request.

On November 10, 2005, a grand jury returned a superceding indictment charging Mr. Curls with the same § 922(g) offense that was tried to the jury and an additional offense: a § 922(g) violation based on his possession of the .32 caliber revolver with the obliterated serial number at his mother's apartment on June 7, 2005. Mr. Curls then moved to dismiss the additional charge, arguing that his "momentary possession" of the firearm on June 7 did not constitute a separate violation of § 922(g). Rec. vol. I, doc. 86, at 2. The district court denied that motion.

Mr. Curls also filed a second motion to suppress. He observed that the law enforcement officers had not given him the Miranda warnings before they asked him about the contents of the car and requested permission to search, and he

maintained that the failure to give the warnings violated his Fifth Amendment rights. The court denied that motion as well.

The district court held a second jury trial in January 2006. At this trial, Mr. Curls sought to defend the new § 922(g) charge by contending that he was an innocent owner in that he possessed the firearm for no illicit purpose and "took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible." Rec. vol. I, doc. 102, at 1. The district court refused to allow Mr. Curls to present an innocent owner defense. Nevertheless, the second jury trial, like the first one, ended in a mistrial when the jury was unable to reach a verdict.

In March 2006, the district court conducted a third jury trial. Mr. Curls filed two additional motions to suppress, adopting the arguments made in his prior motions. See Rec. vol. I, doc. 88 (stating that "the Defendant wants to make it clear that in his opinion the traffic stop was illegal, and/or the Defendant was not Mirandized prior to questioning"); doc. 125 (adopting the prior three motions to suppress). The court denied the motions.

Additionally, at the third trial, Mr. Curls again sought to present an innocent owner defense to the second § 922(g) charge, and the district court again denied his request. As in the second trial, Mr. Curls testified in his own defense, stating that, on the morning of June 7, 2005, he had discovered the firearm and some ammunition in a pile of clothes in the living room of his mother's

apartment. According to Mr. Curls, his cousin Mr. Dansby had been wearing the clothes. Mr. Curls reported that he looked at the gun for fifteen or twenty seconds, picked it up, loaded it with the bullets lying next to it, proceeded to the bathroom where Mr. Dansby was, gave it to him, and told Mr. Dansby to get it out of the house.

As to his arrest on June 8, 2005, Mr. Curls asserted that he was not aware that there was a gun in the car until he saw the police officers approaching and opened the console to look for a lighter. When asked about his prior verbal and written statements at the Tulsa Police Department that the gun belonged to him, Mr. Curls asserted that they were not true. He maintained that the ATF agent had told him what to include in the written statement.

The third jury convicted Mr. Curls on both counts. At sentencing, the district court applied § 3C1.1 of the United States Sentencing Guidelines and imposed a two-level increase in the offense level for an obstruction of justice. The court found that Mr. Curls had committed perjury in testifying at trial that his written statement admitting knowing possession of the gun on June 8, 2006 was not true. The court sentenced him to two concurrent terms of 120 months' imprisonment, followed by two concurrent three-year terms of supervised release.

## II. DISCUSSION

### A. Missing Signature of the Grand Jury Foreman

Mr. Curls notes that the copy of the superceding indictment placed in the public court file was signed only by an Assistant United States Attorney. In the space designated for the grand jury foreperson's signature, the following notation appears: "/s/ Grand Jury Foreman." Rec. vol. I doc. 79, at 3. Mr. Curls maintains that the failure of the indictment in the court file to contain the foreperson's name and signature violates Rule 6(c) of the Federal Rules of Criminal Procedure, his Fifth Amendment right to be indicted by a grand jury, and his Sixth Amendment right to a public trial. As a result, he argues, the indictment is nullity, and the district court erred in denying his motion to dismiss.

Significantly, Mr. Curls does not contend that the original superceding indictment was not signed by the foreperson or that the grand jury itself did not vote to issue that indictment. Indeed, during a motions hearing before the district court, Mr. Curls's attorney acknowledged that he had not attempted to examine the original indictment and that "[t]here's no doubt in my mind that it was signed by a real person and their name is on there." Rec. vol. III, at 4. He explained, "The point I was making in the brief is that it's not made public record who this person is and, therefore, it violates the right to a public trial." Id.

Mr. Curls's challenge to the indictment raises a legal question that we examine de novo. See United States v. Avery, 295 F.3d 1158, 1173-74 (10th Cir.

-8-

2002).  Having done so, we agree with the district court that dismissal of the indictment is not warranted.

In particular, Mr. Curls has failed to establish a violation of Rule 6(c) of the Federal Rules of Criminal Procedure.  That rule provides that "[t]he court will appoint one juror as the foreperson and another as the deputy foreperson" and that "[t]he foreperson may administer oaths and affirmations and will sign all indictments."  Rule 6(c) does not require the signature of the foreman to appear in the copy of the indictment that is placed in the public file.  Moreover, even if that rule, or some other authority, did impose such a requirement, Mr. Curls has failed to establish that dismissal of the indictment would be an appropriate remedy.  See Hobby v. United States, 468 U.S. 339, 345 (1984).  ("Even the foreman's duty to sign the indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment.").

Similarly, the lack of the foreman's signature in the public file does not indicate that the grand jury itself failed to issue the indictment  See Russell v. United States, 369 U.S. 749, 771 (1962) (observing that the Fifth Amendment "limit[s] [a defendant's] jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge") (internal quotation marks omitted).  Thus, Mr. Curls has failed to establish a violation of the Fifth Amendment as well.

Finally, as to the alleged violation of Mr. Curls's Sixth Amendment right to a public trial, we reiterate the view expressed in a prior decision in which Mr. Curls's attorney raised the same argument:

> While the Sixth Amendment right to a public trial has been extended outside the actual presentation of evidence at trial, see, e.g., Waller v. Georgia, 467 U.S. 39, 47 (1984) (pretrial suppression hearing); Press-Enter. Co. v. Superior Court of Cal., Riverside County, 464 U.S. 501, 505-08 (1984) (voir dire proceedings), we have uncovered no cases, and [Mr. Curls] cites to none, in which the Sixth Amendment right to a public trial has been extended to require the grand jury foreperson's identity or signature be made public.

United States v. Reed, 195 Fed. Appx. 815, 820 (10th Cir. 2006) (unpublished).

## B. Alleged Multiplicity

Mr. Curls argues that the two § 922(g) charges in the indictment cover the same activity and are therefore multiplicitous. As a result, he maintains, the district court erred in denying his motion to dismiss the second count of the superceding indictment.

We review the district court's decision de novo. United States v. Graham, 305 F.3d 1094, 1100 (10th Cir. 2002). "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." United States v. Johnson, 130 F.3d 1420, 1424 (10th Cir. 1997). Although "multiplicity is not fatal to an indictment," id. (internal quotation marks omitted), multiplicitous counts which may result in multiplicitous convictions are considered "improper because they allow multiple punishments for a single criminal offense." United

-10-

States v. Jenkins, 313 F.3d 549, 557 (10th Cir. 2002). "[M]ultiplicitous sentences violate the Double Jeopardy Clause." United States v. Morris, 247 F.3d 1080, 1083 n.2 (10th Cir. 2001).

"The test [for multiplicity] is whether the individual acts [alleged in the counts at issue] are prohibited, or the course of [conduct] which they constitute." Graham, 305 F.3d at 1100 (third alteration in original) (internal quotation marks omitted). "If the former, then each act is punishable separately. If the latter, there can be but one penalty." Id. (internal quotation marks omitted). Where multiplicitous convictions are found, "the only remedy . . . is . . . to vacate one of the underlying convictions as well as the . . . sentence based upon it." Rutledge v. United States, 517 U.S. 292, 301-02 (1996) (internal quotation marks omitted).

Generally speaking, "Congress intended the crime of possession to refer to a course of conduct rather than individual acts of dominion." United States v. Jones, 403 F.3d 604, 606 (8th Cir. 2005). Thus, "the continuous possession of the same firearm constitutes a single offense." Id.; see also United States v. Fleischli, 305 F.3d 643, 658 (7th Cir. 2002) ("Possession of a firearm is a continuing offense which ceases only when the possession stops."); United States v. Finley, 245 F.3d 199, 207 (2d Cir.2001) (holding that "the possession of the shotgun . . . was a continuing offense").

There is an exception to this general rule. "A felon may be charged and convicted on two counts of possessing the same firearm if he first possesses a

weapon, he is aware that his possession is interrupted, and he thereafter reacquires possession of the weapon himself." Jones 403 F.3d at 606. (internal quotation marks omitted).

Mr. Curls maintains that this exception is inapplicable here. He asserts that "[t]he record indicates that [he] was in possession of a stolen handgun on the morning of the first day . . . and continued to possess the handgun, according to the government's theory, until caught with it the second day." Aplt's Br. at 54.

We disagree with Mr. Curls's reading of the record. According to his own testimony, he found the .32 caliber revolver with an obliterated serial number in his mother's apartment on June 7, 2005, picked in up, loaded it, gave it to Mr. Dansby, and proceeded to leave the apartment without it. The government did not seek to rebut that part of his testimony. Indeed, in her cross-examination of Mr. Curls, the prosecutor highlighted his statement that he had left the firearm in the apartment. Thus, the government's theory was that Mr. Curls's possession of the firearm was interrupted and that he had reacquired it the following day, when law enforcement officers discovered it in the center console of the car in which he was riding. Accordingly, we conclude that the two counts of the superceding indictment are not multiplicitous. See United States v. Conley, 291 F.3d 464, 470-71 (7th Cir. 2002) (concluding that "[b]ecause the Government was required to convince the jury beyond a reasonable doubt of [the defendant's] possession of the shotgun on two separate dates, as two distinct courses of conduct, the

Government established the elements of two separate crimes" and that "the indictment is [thus] not multiplicitous").

## C. Motion to Suppress

In the district court proceedings, Mr. Curls argued that the firearm and ammunition discovered on June 8, 2005 should be suppressed because the officers (1) lacked the reasonable suspicion necessary to detain him and (2) failed to administer Miranda warnings before asking him about the contents of the car and whether they could search it. He repeats the second argument in his appellate brief, and he also argues that suppression is warranted because his consent was coerced. We review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Hishaw, 235 F.3d 565, 569 (10th Cir. 2000). We view the record in the light most favorable to the government, as the prevailing party. Id.

Here, significantly, Mr. Curls does not challenge the initial grounds for the stop–that the officers reasonably believed that Mr. Baxter, the driver of the car, was a gang member with an outstanding felony warrant. See United States ex rel. Kirby v. Sturges, 510 F.2d 397, 401 (7th Cir. 1975) ("[A]n arrest or stop based upon a reasonable mistake as to identity is lawful.") (citing Hill v. California, 401 U.S. 797 (1971)) (internal quotation marks omitted). Nor does Mr. Curls challenge the degree of force that the officers used in light of that belief,

-13-

approaching the car with weapons drawn and placing Mr. Curls and Mr. Baxter in handcuffs. United States. v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993) (stating that "[w]hile Terry stops generally must be fairly nonintrusive, officers may take necessary steps to protect themselves if the circumstances reasonably warrant such measures" and that "[t]he use of guns in connection with a stop is permissible where the police reasonably believe [the weapons] are necessary for their protection") (third alteration in original) (internal quotation marks omitted). We therefore begin our analysis with the presumption that the officers' initial stop of the car, drawing of weapons, and the use of handcuffs were part of a lawful investigative detention based on a reasonable (but mistaken) suspicion that there was a felony arrest warrant for Mr. Baxter.

Nevertheless, we must still examine the officers' questioning of Mr. Curls. Mr. Curls maintains that, because they ordered him out of the car at gunpoint and handcuffed him, the officers transformed an investigative detention into an arrest and were therefore required to give him the Miranda warnings before they could ask him about the contents of the car. As a general rule, two conditions must be met before Miranda warnings are required: "the suspect must be in 'custody,' and the questioning must meet the legal definition of 'interrogation.'" Id. at 1463. Under Miranda, the term "interrogation" "refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police

should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

"The traditional view . . . is that Miranda warnings are simply not implicated in the context of a valid Terry stop." Perdue, 8 F.3d at 1464. However, law enforcement officials may create the custodial interrogation that Miranda contemplates "by employing an amount of force that reache[s] the boundary line between a permissible Terry stop and an unconstitutional arrest." Id.

For example, in Perdue, officers forced the defendant out of his car and onto the ground at gunpoint. While the defendant remained face down on the ground with guns pointed at him, the officers asked him what he was doing on the property. When the defendant responded that "he was there to check on his stuff," the officers asked, "What stuff?" Id. at 1459. The defendant responded, "The marijuana that I know you guys found in the shed." Id.

We held that the defendant was in custody. See id. at 1465 (explaining that "[a]ny reasonable person in [the defendant's] position would have felt completely at the mercy of the police") (internal quotation marks omitted). Additionally, the officers' questions constituted an interrogation. The officers were executing a search warrant after obtaining information that marijuana was being grown on the property. Their questions to the defendant were reasonably likely to elicit incriminating responses. Therefore, the officers should have informed the

defendant of his constitutional rights and their failure to do so violated <u>Miranda</u>.
<u>Id.</u>

Here, Mr. Curls has a colorable argument that, like the defendant in <u>Perdue</u>, the officers' drawing of weapons and use of handcuffs placed him in custody. Nevertheless, our precedent establishes that the officers' request for his consent to search the car did not constitute an interrogation requiring the <u>Miranda</u> warnings. <u>See</u> <u>United States v. McCurdy</u>, 40 F.3d 1111, 1118 (10th Cir. 1994) ("An officer's request to search a defendant's automobile does not constitute interrogation invoking a defendant's <u>Miranda</u> rights."); <u>United States v. Gay</u>, 774 F.2d 368, 379 (10th Cir. 1985) (holding that the act of asking a suspect for consent to search did not constitute an interrogation because "[s]uch a request generally cannot be said to lead to an incriminating response"); 2 Wayne R. LaFave et al. CRIMINAL PROCEDURE § 6.7(b), at 553 (2d ed. 1999) ("[A] non-accusatory request that a person consent to a search is likewise not interrogation under the <u>Innis</u> test.").

As a result, because Mr. Curls told the officers that they could search the car, the proper disposition of his motion to suppress turns on whether his consent was knowing and voluntary. In his appellate brief, Mr. Curls argues that the fact that three officers ordered him out of the car at gunpoint and placed him in handcuffs establishes that his consent to the search was coerced. However, as noted by the government, Mr. Curls did not make this argument in the district

-16-

court proceedings, and the district court made no findings on this issue.[1]

Accordingly, our review is only for plain error. See United States v. Brooks, 427 F.3d 1246, 1249 (10th Cir. 2005) (reviewing a challenge to the scope of a search only for plain error because the defendant failed to advance it below).

We discern no such error here. Mr. Curls's argument amounts to the contention that the officers' drawing of weapons and the use of handcuffs, even if reasonable under the Fourth Amendment, renders any subsequent consent involuntary. However, a number of decisions have rejected that view. See United States v. Guiterrez, 92 F.3d 468, 471 (7th Cir. 1996) (stating that "while we understand that the circumstances at the truck yard—law enforcement officers brandishing weapons, handcuffing [the defendant], and ordering him up against a wall—were unpleasant, there is nothing so inherently coercive about such tactics . . . to render subsequent cooperation involuntary") (internal quotation marks omitted); United States v. Hidalgo, 7 F.3d 1566, 1571 (11th Cir. 1993) (concluding that consent was voluntarily given even though the defendant had been "arrested by SWAT team members who broke into his home in the early morning, woke him, and forced him to the ground at gunpoint"); United States v. Espinosa-Orlando,

---

[1] In his reply brief, Mr. Curls argues that he "did not waive [t]he issue of improper search and seizure." Reply Br. at 12. He notes that he challenged the validity of the initial stop and the failure to give the Miranda warnings. However, he does not argue that he challenged the validity of the consent to search the car on any grounds other than that it was the fruit of an unlawful stop and interrogation.

704 F.2d 507, 510, 513 (11th Cir.1983) (concluding consent voluntarily given after four officers had drawn their weapons, asked the defendant to step away from his car, told him to lie on the grass, and asked for consent while he was on the ground and one officer still had his weapon drawn). Moreover, we note that Mr. Curls has cited no case law supporting his contention that the circumstances here were inherently coercive.

We therefore conclude that because Mr. Curls consented to the search of the car, the district court did not err in denying his motion to suppress.[2]

---

[2] As we have noted, Mr. Curls sought to suppress not only the evidence found in the car but also his statement prior to the search that there was a gun in the center console. He contends that his Fifth Amendment rights were violated because the police officers did not administer the Miranda warnings before eliciting this statement. The government responds that Mr. Curls's statement about the gun was not the result of an interrogation but rather a spontaneous utterance that did not trigger an obligation to administer the warnings.

We need not resolve that issue here. Even assuming that Mr. Curls's statement was made in response to a custodial interrogation to which Miranda applies, we conclude that the admission of the statement was harmless beyond a reasonable doubt. Even without the statement, the jury heard evidence that the gun was in the car and that after receiving the Miranda warnings at the police station, Mr. Curls had admitted possessing it. Moreover, in his own trial testimony, Mr. Curls stated that, before the officers searched the car, he told the officers that he had seen a gun in the center console. Rec. vol. X, at 148-150. See United States v. Blackman, 897 F.2d 309, 315 (8th Cir. 1990) ("Although we tend to agree with [the defendant] that the district court erred in refusing to suppress the statements [made without the benefit of Miranda warnings], we hold that the error was harmless in light of the overwhelming evidence submitted against [the defendant].").

-18-

## D. Alleged Juror Misconduct

After the first jury trial, Mr. Curls moved to dismiss the indictment on the grounds that at least one security guard, and possibly two, had laughed and scoffed during his closing argument. Rec. vol. I, doc. 53, at 1. The district court based its denial of the motion on its own observations in the courtroom:

> In this instance, the trial proceeding[] was at all times under the control of the court. During closing argument, the Court was aware of the atmosphere and conduct of the entire courtroom, with the main focus of attention on the jury and the lawyers addressing the jury. Thirty-one years experience on the bench has taught me that if anything is distracting or attracting the attention of a juror, it is evident to the Court by a juror's movement or reaction . . . .
>
> During closing argument, and at all other times, the Court did not perceive any misconduct by a spectator or others in the courtroom. The Court observed that all jurors were concentrating on the statements of the lawyers during each respective closing argument. The Court is confident that if any such purported improper conduct existed as alleged by the defendant, none of the empaneled jurors perceived it, was distracted, nor was influenced by it. Moreover, the defendant's statement is merely speculative, with no supporting evidence of any juror being influenced by the purported improper conduct of the Tulsa police officer situated in the courtroom.

Rec. vol. I, doc. 69 at 3.

We review the district court's decision for an abuse of discretion. See United States v. Simpson, 950 F.2d 1519, 1521 (10th Cir. 1991). "Whether a district court abused its discretion in denying the motion depends on whether there

-19-

is a reasonable possibility the extraneous material may have affected the jury's verdict." Id.

We discern no such reasonable possibility here. The district court had the opportunity to observe the jurors first-hand, and Mr. Curls has failed to demonstrate that the court's observations regarding the jurors' disregard of the alleged misconduct were incorrect.

### E. Innocent Possession Theory of Defense

During the third jury trial, Mr. Curls requested the court to give the following "innocent possession" instruction:

> It is a defense to the charge of unlawful possession of a firearm that the defendant's possession of the firearm constituted innocent possession.
>
> Possession of a firearm constitutes innocent possession where:
>
> 1. The firearm was obtained innocently and held with no illicit purpose; and
>
> 2. Possession of the firearm was transitory, i.e., in light of the circumstances presented there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible.
>
> If you find that the defendant possessed a firearm specified in Count 1 and that possession constituted innocent possession, you should find the defendant not guilty.

Rec. vol. I, doc. 102, at 1-2. Mr. Curls's requested instruction was given by the district court in United States v. Herron, 432 F.3d 1127, 1135 (10th Cir. 2005). Here, Mr. Curls argued to the district court that, on June 7, 2005, when he discovered the firearm in his mother's apartment, he had possessed it with no illicit purpose and had taken adequate measures to rid himself of it.

The district court declined to give the instruction. At trial, the court informed the jury that innocent possession was not a defense.

> You have heard evidence that the defendant claims he innocently possessed the firearm and ammunition. You are instructed that the court has determined in this case, as a matter of law, there is no innocent possession defense. This of course does not mean that you must automatically find the defendant guilty. Rather, it simply means in your evaluation of the evidence in the case, you must not consider innocent possession as a defense to the crime charged.

Rec. vol I., doc. 146, at 23.

Mr. Curls now argues that the district court erred in failing to give his requested instruction and in informing the jury that the innocent possession defense was not applicable. He notes that an innocent possession instruction was given in Herron and that, in United States v. Mason, 233 F.3d 619, 625 (D.C. Cir. 2000), the court reversed a conviction because the jury was not instructed on this defense. He also cites several other courts that have recognized this defense. See Aplt's Br. at 22-23 (citing, inter alia, United States v. Wolak, 923 F.2d 1193, 1198 (6th Cir. 1991); Bieder v. United States, 707 A.2d 781, 783-84 (D.C. 1998);

People v. Hurtado, 54 Cal. Rptr. 2d 853, 858 (1996); and People v Williams, 409 N.E.2d 1372, 1373 (N.Y. 1980)).

We engage in de novo review of the jury instructions a whole, asking whether they accurately informed the jury of the issues and the governing law. United States v. McPhilomy, 270 F.3d 1302, 1310 (10th Cir. 2001). As part of this de novo inquiry, we consider whether a defendant is entitled to a "theory of defense instruction that is supported by the evidence and the law." United States v. Wolny, 133 F.3d 758, 765 (10th Cir. 1998). "[A] 'theory of the defense' instruction is required only if, without the instruction, the district court's instructions were erroneous or inadequate." Id. "However, a 'theory of the defense' instruction is not required if it would simply give the jury a clearer understanding of the issues." Id.

Mr. Curls acknowledges that the Tenth Circuit has not yet addressed the question of whether an innocent possession defense in available to firearms charges such as those at issue here. However, he observes the defendant in Herron sought and obtained such an instruction. See 432 F.3d at 1135. The evidence at trial was that Mr. Herron had helped his girlfriend purchase a firearm at a sporting goods store and had accompanied her into the desert for target practice with it. The girlfriend filled out the firearm transaction report at the store, and she stored the gun at her apartment. A jury convicted Mr. Herron of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

In affirming Mr. Herron's conviction, we did not address the circumstances, if any, warranting an innocent possession instruction. Instead, we discussed the instruction in the context of a claim of prosecutorial misconduct during closing argument. Mr. Herron contended that some of the prosecutor's statements improperly informed the jury that they could disregard the innocent possession instruction. We disagreed, reasoning that "most of the prosecutor's comments were proper argument based on the court's instruction. The prosecutor was simply arguing that the innocent possession defense did not apply to the facts of Mr. Herron's case." 432 F.3d at 1136.

We note that our decision in United States v. Al-Rekabi, 454 F.3d 1113, 1121 (10th Cir. 2006), addresses a somewhat similar defense–fleeting possession. We explained that, as set forth by other courts, the fleeting possession defense requires the defendant to establish that he (a) "merely momentarily possessed [the] contraband" and (b) "either lacked knowledge that he possessed the contraband or had a legally justifiable reason to possess it temporarily." Al-Rebaki, 545 F.3d at 1126 n.16 (quoting United States v. Atkins, 196 F.3d 1112, 1115 (10th Cir. 1999)). We concluded that the fleeting possession defense was redundant to the necessity defense because "both defenses . . . require the defendant to prove that no

reasonable alternative was available to him given the circumstances." Al-Rebaki, 429 F.3d at 1126.[3]

We have unearthed no other decisions from this court that have addressed the innocent possession defense when the defendant asserts, as Mr. Curls does here, that he inadvertently discovered a firearm. However, as Mr. Curls observes, the D.C. Circuit has addressed the application of the defense in those circumstances. In Mason, a defendant charged with a § 922(g)(1) offense, testified that, as he was returning to his delivery truck, he found a gun and ammunition in a brown paper bag lying on the ground. He picked up the bag, took out the gun, put the ammunition in his pocket, and tucked the gun into his belt. He proceeded to the Library of Congress, where, the defendant maintained, he intended to turn the gun over to a Library of Congress police officer that he knew. Library of Congress security officers saw the gun and arrested the defendant as he tried to enter the building.

In reversing Mr. Mason's conviction, the D.C. Circuit noted the government's concession that "although narrow, there must be an innocent possession defense to a § 922(g)(1) charge." Mason, 233 F.3d at 623. The court

_____

[3] We further explained that the necessity defense, requires the defendant to show that "(1) there is no legal alternative to violating the law; (2) the harm to be prevented is imminent, and (3) a direct causal relationship is reasonably anticipated to exist between the defendant's action and the avoidance of the harm." Al-Rebaki, 429 F.3d at 1121 (internal quotation marks and citation omitted).

-24-

agreed, reasoning that to completely reject the defense would be to say that "a felon-in-possession *always* will be guilty without regard to how or why he came into possession or for how long possession was retained." Id.  "Thus, for example, if Mason did indeed innocently pick up a bag containing a gun (not knowing what was in the bag), he would be guilty the moment he was seen holding the bag knowing of its contents, even if he had every intention of relinquishing possession immediately. There is nothing to indicate that Congress intended such a harsh and absurd result." Id.

The D.C. Circuit acknowledged that it had found no other circuit that had allowed a defendant to present an innocent possession defense when the elements of a justification offense were not present.  However, the court held, the defense would apply if "(1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory—i.e., in light of the circumstances presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible." Id. at 624.  In order to be entitled to an innocent possession instruction, the defendant must demonstrate both that he "intend[ed] to turn the weapon over to the police and that 'he was pursuing such an intent with immediacy and through a reasonable course of conduct.'" Id. (quoting Logan v. United States, 402 A.2d 822, 827 (D.C.1979)).

The D.C. Circuit provided an example in which the defense would clearly apply. If a defendant returned to his truck and found that it had been broken into and that a gun had been left on the driver's seat, his picking up the gun, removing the ammunition, immediately calling 911 to seek assistance, and turning over the gun to officers when they arrived would justify a judgment of a acquittal on a § 922(g)(1) charge. In contrast, if a defendant who found a gun in his truck proceeded to hide it, say nothing about it, take it home, and keep it in his residence until the next day, he could not assert an innocent owner defense. Id. In Mason, the D.C. Circuit said, there was a factual dispute about whether the defendant "took the necessary steps to dispose of the gun with immediacy and through a reasonable course of conduct." Id. at 625. Thus, the court held that the innocent possession defense should have been presented to the jury.

Here, we need not decide whether to follow the D.C. Circuit in recognizing the innocent possession defense when the elements of a justification defense are not present. Even if the defense is available in certain circumstances, those circumstances are not present here. As the government observes, Mr. Curls testified that, on June 7, 2005, he picked up the gun that he found in his mother's apartment, loaded it, knocked on the bathroom door, gave it to Mr. Dansby, and left the apartment. He made no attempt to contact law enforcement officials and, when asked on cross-examination about the failure to do so, explained that did he did not want to go to the penitentiary. Rec. vol. X, at 169. Moreover, Mr. Curls

-26-

acknowledged that at the time there were two young children in the apartment. Finally, the fact that the officers discovered the gun in his mother's car on the following day further casts doubt on his assertion of innocent possession.

Accordingly, the circumstances in this case are substantially different than those considered by the D.C. Circuit in Mason and do not support a colorable argument that Mr. Curls "took adequate measures to rid himself of the firearm as promptly as reasonably possible." 233 F.3d at 624. We appreciate the D.C. Circuit's observation that, in enacting § 922(g)(1), Congress did not intend harsh and absurd results. Nevertheless, the district court's application of the statute here does not engender such a result. We therefore discern no error in its refusal to instruct the jury on an innocent possession defense.

## F. Obstruction of Justice

The district court imposed a two-level increase in Mr. Curls's offense level for obstruction of justice under § 3C1.1 of the United States Sentencing Guidelines. The court found that Mr. Curls had committed perjury at trial by asserting that his prior statements acknowledging ownership of the gun were not true. Mr. Curls now contends that the district court erred in increasing the offense level because the government did not show that he "significantly or materially impede[d] the official investigation or prosecution of the instant offense." Aplt's Br. at 59. He also maintains that the record does not support the district court's

conclusion that he committed perjury at trial. We review de novo the district court's legal conclusions, and we examine for clear error its factual findings supporting the application of a particular sentencing guidelines provision. United States v. Chavez, 229 F.3d 946, 954 (10th Cir. 2000).

Under § 3C1.1 of the Sentencing Guidelines, "[i]f . . . the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense," the offense level must be increased by two levels. Section 3C1.1's commentary explicitly includes perjury within its prohibition. See USSG § 3C1.1 cmt. n.4; United States v. Dunnigan, 507 U.S. 87, 92-93 (1993). Thus, if a defendant commits perjury, the prosecution need not prove that he obstructed the government's investigation or prosecution in any other way to support the enhancement. However, a "sentencing court must make a specific finding-that is, one which is independent of the jury verdict-that the defendant has perjured h[im]self." United States v. Anderson, 189 F.3d 1201, 1213 (10th Cir. 1999) (internal quotation marks omitted). The required finding must encompass all of the factual predicates of perjury, including falsity, materiality, and willful intent. United States v. Massey, 48 F.3d 1560, 1574 (10th Cir. 1995).

Here, the presentence report concluded that "Mr. Curls committed obstruction of justice during the prosecution of this offense by committing perjury

during his jury trials." Rec. vol. II ¶ 13, at 6. The report explained that Mr. Curls's recanting of his confession to possession of the firearm on June 8, 2005 was false and was "willful and intentional and was not given by mistake, faulty memory or confusion." Id. ¶ 15, at 7. At the sentencing hearing, the district court agreed with the presentence report, finding as to Mr. Curls's statements during his trial testimony denying possession of the gun, that "they were false, they were incorrect, [and] knowingly so." Rec. vol. XI, at 10.

We discern no clear error in the district court's findings. The court had the opportunity to assess Mr. Curl's trial testimony and to compare it to his prior confession as well as other evidence supporting the government's case (e.g., testimony from Mr. Curls's ex-girlfriend that he had said that he had been robbed while leaving a casino and was going to get a gun). We will not second-guess its decision. See United States v. Litchfield, 959 F.2d 1514, 1523 (10th Cir. 1992) (noting that "[o]ur deference to the district court is especially appropriate when the issue concerns questions of a witness'[s] credibility").

## G. Reasonableness of Sentence

Finally, Mr. Curls contends that his sentences (concurrent terms of 120 months on each § 922(g)(1) conviction) were unreasonable. He invokes USSG § 2K2.1(b)(2), which provides a reduction in the offense level if a firearm was

possessed "solely for lawful sporting purposes." Although Mr. Curls does not contend that he possessed the firearm for sporting purposes, he maintains that § 2K2.1(b)(2) is applicable "by analogy." Aplt's Br. at 62. He further contends that his possession of the firearm "was much less lethal or unlawful than the '[s]porting purpose' exception." Id.

In reviewing a post-Booker sentence for reasonableness, we first determine whether the district court considered the applicable Guideline range. United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006). If the court properly considered the Guideline range and sentenced the defendant within that range, then we presume the sentence to be reasonable. Id. The defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the factors set forth in 18 U.S.C. § 3553(a). Id.

Here, even without the benefit of that presumption, we conclude that Mr. Curls's sentence was reasonable. The district court determined the Guideline range to be 110 to 137 months. The sentence imposed for each count falls within that range. Moreover, the court considered Mr. Curls's criminal history, which included felony convictions for second-degree murder and possession of cocaine with the intent to distribute—as well as the circumstances surrounding the instant offense and his giving false testimony at trial. In light of this evidence, the factor invoked by Mr. Curls, that his possession was allegedly "less lethal or unlawful,"

Aplt's Br. at 62, than possessing a firearm for sporting purposes, does not undermine the district court's sentencing decision.

## III. CONCLUSION

Accordingly, we AFFIRM Mr. Curls's convictions and sentences.


Entered for the Court,


Robert H. Henry
Circuit Judge